**ROBERT L. SWAIN**
Attorney at Law
California Bar No. 144163
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1494
Facsimile: (619) 544-1473

Attorney for Defendant **Arnoldo-Arevalo**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  08-CR-0293-LAB |
| Plaintiff, | DATE: March 17, 2008 |
| v. | TIME:   2:00 p.m. |
| **LUIS ARNOLDO-AREVALO**, | |
| | STATEMENT OF FACTS AND |
| | MEMORANDUM OF POINTS AND |
| | AUTHORITIES IN SUPPORT OF |
| Defendant. | DEFENDANT'S MOTIONS. |

**I.**

**STATEMENT OF FACTS**[1]

According to information provided by the government, on February 13, 2006, a deportation officer in El Centro, California ordered Mr. Arnoldo-Arevalo removed from the United States. (Exhibit B.)  This order was apparently executed on February 21, 2006, with Mr. Arnoldo-Arevalo being removed from the United States. The proceedings were initiated by a notice of intent to remove which is dated both February 7, and February 10, 2006. (Exhibit A.)  The basis for Mr. Arnoldo-Arevalo's expedited removal was an alleged conviction for an aggravated felony after admission into the United States.

Mr. Arnold-Arevalo was then arrested on January 9, 2008, as he was entering the country at

---

[1] Facts referred to in this memorandum are based on information provided by the government. Mr. Arnoldo-Arevalo reserves the right to challenge them at any time.

the San Ysidro port of entry. Mr. Arnoldo-Arevalo was said to have presented a counterfeit document as he was entering the country through the pedestrian lane at about 9 o'clock in the morning. He was sent to secondary, where he was identified and arrested. Mr. Arnoldo-Arevalo has been named in a single count indictment with attempted entry after deportation in violation of 8 U.S.C. 1326.

Mr. Arnoldo-Arevalo is 36 years old and a long time resident of the United States. He was brought here as a child at the age of five and grew up in his aunt's house in Los Angeles. Unfortunately, he was never enrolled in school and began working in construction as a young child. He later started a family, and has three United States citizen daughters, ages, 13, 11, and 7. He is alleged to have a single criminal conviction in 2001, and a single removal in 2006. The removal was not a normal deportation after a deportation hearing, but rather an informal expedited removal performed by an immigration officer. The forms pertaining to this informal proceeding are in English, and no Spanish translation was provided to Mr. Arnoldo-Arevalo.


**II.**

**MOTION TO DISMISS INDICTMENT DUE TO AN INVALID REMOVAL.**

**A.    Summary of Argument.**

Mr. Arnoldo-Arevalo was expeditiously removed from the United States, and denied a full and complete hearing before an immigration judge ("IJ"), because a deportation officer concluded that Mr. Arnoldo-Arevalo had previously been convicted of an aggravated felony. The Department of Homeland Security ("DHS") may have lacked competent evidence of the alleged prior aggravated felony to substantiate the expedited removal if the documents relied upon were neither the original nor certified copies. Moreover, the Notice of Intent to Issue a Final Administrative Removal Order ("Notice") (Exhibit A) was not read to, nor presented, in Spanish to Mr. Arnoldo-Arevalo. Exhibit C, "Declaration of Luis Arnoldo-Arevalo in support of motion to dismiss the indictment." Furthermore, Mr. Arnoldo-Arevalo was denied his right to counsel. Last, Mr. Arnoldo-Arevalo was not provided with a list of free legal services. These errors violated Mr. Arnoldo-Arevalo's due process rights. As such, the government may not rely on Mr. Arnoldo-Arevalo's 2006 removal in

prosecuting him under 8 U.S.C. § 1326. As there is no other removal the government may rely on in prosecuting him, Mr. Arnoldo-Arevalo moves this Court for an order dismissing the Indictment.

**B. Mr. Arnoldo-Arevalo's 2006 Removal May Not Serve as the Basis of a Section 1326 Prosecution.**

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004) (citing United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987)). To "sustain a collateral attack under § 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." Id.

**1. Mr. Arnoldo-Arevalo is Exempt From § 1326(d)'s Exhaustion Requirement.**

Following his 2006 expedited removal hearing, Mr. Arnoldo-Arevalo did not seek administrative review of the removal order. Normally, a defendant charged with violating section 1326 who wishes to collaterally challenge his removal must have exhausted any administrative remedies available to him. See 8 U.S.C. § 1326 (d)(1). However, Mr. Arnoldo-Arevalo was denied the opportunity to seek administrative review of the record because the Notice, which was not even translated into Spanish, did not even advise of the right for administrative review. Moreover, because Mr. Arnoldo-Arevalo did not go before an IJ, the Notice was the only document that he received. Moreover, "there is no requirement of [prudential] exhaustion where resort to the agency would be futile. Thus, where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." El Rescate Legal Services, Inc. v. Executive Office for Immigration Review, 959 F.2d 742, 747 (9th Cir.1991) (quotation marks and citations omitted). Here, there is no appellate recourse from a final order of removal for an alien who is removable because of a conviction for an aggravated felony. United States v. Garcia-Martinez, 228 F.3d 956, 958 (9th Cir. 2000). Therefore, because Mr. Arnoldo-Arevalo was not informed of his right to administrative

1  review, and any review would be futile, he is exempt from the exhaustion requirement of section

2  1326(d).

3  **2.    Mr. Arnoldo-Arevalo was Denied Judicial Review.**

4  A defendant seeking to collaterally challenge a deportation under § 1326(d) must show that

5  he was improperly denied the opportunity for judicial review.  See 8 U.S.C. § 1326(d)(2).  The

6  failure to properly inform a person of his right to appeal a removal order satisfies this requirement.

7  See Ubaldo-Figueroa, 364 F.3d at 1050; United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th

8  Cir. 1998), cert denied, 525 U.S. 849 (1998).  Here, because the Notice was not translated into

9  Spanish, Mr. Arnoldo-Arevalo was not informed of the right to appeal, and thus, he improperly

10  denied the opportunity for judicial review.

11  **3.    Mr. Arnoldo-Arevalo's Removal Was Fundamentally Unfair.**

12  To successfully challenge the government's use of a prior removal in a section 1326

13  prosecution, a defendant must show that the entry of that removal order "was fundamentally unfair."

14  8 U.S.C. § 1326(d)(3).  "An underlying removal order is 'fundamentally unfair' if: '(1) [a

15  defendant's] due process rights were violated by defects in his underlying deportation proceeding,

16  and (2) he suffered prejudice as a result of the defects.'"  Ortiz-Lopez, 385 F.3d at 1204 (quoting

17  Zarate-Martinez, 133 F.3d at 1197).

18  **a.    Mr. Arnoldo-Arevalo's removal violated due process.**

19  Mr. Arnoldo-Arevalo's removal violated due process based on the following reasons; one,

20  the deportation officer did not have the proper documentation to substantiate a conviction for an

21  aggravated felony; two, the Notice was not translated into Spanish for Mr. Arnoldo-Arevalo; three,

22  Mr. Arnoldo-Arevalo was denied his constitutional and statutory right to counsel; and fourth, Mr.

23  Arnoldo-Arevalo was not presented with a list of free legal services. Moreover, the use of this type

24  of informal proceeding can not form the basis of an element of a criminal offense consistent with

25  due process. These errors, individually and collectively, resulted in Mr. Arnoldo-Arevalo's removal

26  being fundamentally unfair.

27

28

1

2

**i.    The DHS relied on improper documents in determining that Mr. Arnoldo-Arevalo had previously been convicted of an aggravated felony.**

3       The deportation officer erred in determining that Mr. Arnoldo-Arevalo had previously

4   suffered a conviction for an aggravated felony, subjecting him to an expedited removal.  The

5   expedited removal of aliens who have been convicted of aggravated felonies is codified in 8 U.S.C.

6   § 1228.  Section 1228 requires the proceedings to be conducted in accordance with 8 U.S.C. §

7   1229a.  Under the provisions of section 1229a(c)(3)(B),

8           In any proceeding under this chapter, any of the following documents or records (or
            a certified copy of such an official document or record) shall constitute proof of a
9           criminal conviction:

10              (i)     An official record of judgment and conviction.
                (ii)    An official record of plea, verdict, and sentence.
11              (iii)   A docket entry from court records that indicates the existence of the
                        conviction.
12              (iv)    Official minutes of a court proceeding or a transcript of a court hearing
                        in which the court takes notice of the existence of the conviction.
13              (v)     An abstract of a record of conviction prepared by the court in which the
                        conviction was entered, or by a State official associated with the State's
14                      repository of criminal justice records, that indicates the charge or
                        section of law violated, the disposition of the case, the existence and
15                      date of conviction, and the sentence.
                (vi)    Any document or record prepared by, or under the direction of, the
16                      court in which the conviction was entered that indicates the existence
                        of a conviction.
17              (vii)   Any document or record attesting to the conviction that is maintained
                        by an official of a State or Federal penal institution, which is the basis
18                      for that institution's authority to assume custody of the individual
                        named in the record.
19
    See also 8 C.F.R. § 1003.41.  Here, Mr. Arnoldo-Arevalo has not been provided evidence that the
20
    A-file contains the original or a properly certified copy of the original of any of the above
21
    documents.
22
            Just any copy of the abstract of judgment in Mr. Arnoldo-Arevalo's A-file is not a certified
23
    copy within the meaning of section 1229a.  A copy can only be properly certified by the custodian
24
    of the original document.  See United States v. Weiland, 420 F.3d 1062, 1073 (9th Cir. 2005)
25
    (finding that copies were properly certified because the legal custodian of the records stated that he
26
    had compared the certified copies to their originals); see also Longoria-Castenada v. INS, 548 F.2d
27
    233 (8th Cir. 1977) (finding that conviction documents were properly certified because "[a] deputy
28

1  clerk had certified that the record was a true copy of the original filed in the clerk's office."); see

2  also Federal Rule of Evidence 902(4) ("A copy of an official record or entry therein, or of a

3  document authorized by law to be recorded or filed and actually recorded or filed in a public office,

4  including data compilations in any form, certified as correct by the custodian or other person

5  authorized to make the certification...."); see also Blacks Law Dictionary, p. 337 (7th Ed. 1999)

6  (defining a certified copy as "[a] duplicate of an original (usu. official) document, certified as an

7  exact reproduction usu. by the officer responsible for issuing or keeping the original.").  Here, the

8  copy of the abstract of judgment may not have been certified by the state of California, and

9  therefore, would not be a certified copy under section 1229a.

10     Even if the copy of the abstract of judgment contained in Mr. Arnoldo-Arevalo's A-file is

11  "certified" by alleged United States immigration officers, this certification does not result in these

12  documents complying with the strict requirements of section 1229a.  First, as is noted above, copies

13  can only be properly certified by the custodian of the record.  Second, fundamental concepts of

14  federalism are violated when an officer of the United States "certifies" an official state document.

15  Last, even if an officer of the United States can properly certify a state document, in this case, the

16  alleged INS officers failed to comply with 8 C.F.R. § 1003.41(b).[2]  Section 1003.41(b) provides, in

17  relevant part,  "a copy of any such document or record may be submitted if it is attested in writing

18  by an immigration officer to be a true and correct copy of the original."  Here, however, the alleged

19  INS officers only certified that these documents are "true and correct cop[ies]" of copies.  Thus, this

20  "certification" does not even comply with section 1003.41(b).  Therefore, there is insufficient

21  documentation to substantiate a conviction for an aggravated felony.

22     Mr. Arnoldo-Arevalo's due process rights were violated.  The DHS did not have sufficient

23  documentation to support a finding that Mr. Arnoldo-Arevalo had previously been convicted of an

24  aggravated felony, and thus Mr. Arnoldo-Arevalo was not properly subject to the expedited removal

25  provisions of section 1228.  In subjecting Mr. Arnoldo-Arevalo to an expedited removal under

26

27     [2]     This section is improper in light of congressional intent as clearly evidenced by 8
   U.S.C. § 1229a.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S.
28  837, 842-43 (1984).

section 1228 without competent evidence, the DHS failed to comply the strict requirements of section 1229a. The DHS's failure to comply with a regulation constitutes a violation of due process. See  Piccirillo v. INS, 512 F.2d 1289 (9th Cir. 1975); Getachew v. INS, 25 F.3d 841, 845 (9th Cir.1994); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953).  Therefore, Mr. Arnoldo-Arevalo's due process rights were violated because the DHS failed to comply with the requirements of section 1228 and 1229a.

### ii.    The DHS violated Mr. Arnoldo-Arevalo's due process rights by failing to translate the Notice into Spanish.

The failure of the DHS to translate the Notice for Mr. Arnoldo-Arevalo into Spanish violated his right to due process.  8 U.S.C. § 1228, requires in part,

The Attorney General shall provide that--

(A)    the alien is given reasonable notice of the charges and of the opportunity described in subparagraph (C);

(B)    the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose; [and]

(C)    the alien has a reasonable opportunity to inspect the evidence and rebut the charges.

In order to ensure that these rights are complied with, "The service must either provide the alien with a written translation of the Notice of intent or explain the contents of the Notice of Intent in the alien's native language or in a language that the alien understands."  8 C.F.R.§238.1(b)(2)(v); accord Khan v. Ashcroft, 374 F.3d 825, 828 (9th Cir. 2004).  Here, the DHS neither translated the Notice into Spanish, nor provided Mr. Arnoldo-Arevalo with a translated copy.  See Exhibits A and C.

First, in his declaration, Mr. Arnoldo-Arevalo indicates that he is a Spanish speaker who neither speaks nor reads English fluently.  Attachment C.  He further sets forth that Notice was not presented to him, nor read to him, in Spanish.

Second, other evidence, beyond Mr. Arnoldo-Arevalo's sworn statement, supports a finding that this document was not translated into Spanish.  One, on the second page of the Notice, there is a portion which states: "I explained and/or served this Notice of Intent to the alien in the English [or] Spanish language."  Attachment A.  Under this section, there is a place for the name and the

08-CR-0293

signature of the interpreter.  Here, the box indicating the Notice was explained is marked, but there is no name nor signature of an interpreter.  Therefore, the DHS failed to comply with its obligations under the statute, which constitutes a due process violation.  See  Piccirillo, 512 F.2d 1289; Getachew v. INS, 25 F.3d at 845; Shaughnessy, 345 U.S. at 212.

The failure to translate the Notice results in further due process violations.  The Supreme Court has made clear that due process requires that an alien be provided with notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard.  Kwong Hai Chew v. Colding, 344 U.S. 590, 597-98 (1953); see also Dobrota v. INS, 311 F.3d 1206, 1210 (9th Cir.2002) ("Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and notice of that hearing."); Farhoud v. INS, 122 F.3d 794, 796 (9th Cir.1997) ("The Due Process Clause protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing.").  Because persons facing an expedited removal under section 1228 do not go before an IJ, their only notice of the charges and their rights are contained in the Notice.  Specifically, the Notice informs the person of the charges against them, the right to counsel, and the right to review the government's evidence and present evidence.  See Attachment A.  Here, however, the Notice was not translated into Spanish for  Mr. Arnoldo-Arevalo.  Therefore, because Mr. Arnoldo-Arevalo was not informed of the charges against him, his right to counsel, nor the right to review the government's evidence or to present evidence himself, the proceedings violated his right to due process.

### iii.    Mr. Arnoldo-Arevalo was denied his right to counsel.

Mr. Arnoldo-Arevalo's constitutional and statutory rights to counsel were violated because he was never informed that he had the right to an attorney.  See Baltazar-Alcazar v. Ashcroft, 364 F.3d 940, 944 (9th Cir. 2004); Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir.2004) ( "Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings."); see also 8 U.S.C. § 1229a(b)(4) (finding that a person in proceedings shall have the right "of being represented, at no expense to the

1   Government, by counsel of the alien's choosing who is authorized to practice law in such

2   proceedings...."). Moreover, in expedited removal proceedings conducted pursuant to section 1228,

3   8 C.F.R. § 238.1 specifically requires the Notice to "advise that the alien: has the privilege of being

4   represented, at no expense to the government, by counsel of the alien's choosing, as long as counsel

5   is authorized to practice in removal proceedings...." Here, the only mention of right to counsel is

6   on the Notice, which was not translated for Mr. Arnoldo-Arevalo. Thus, he was never informed of

7   his right to counsel.

8        The failure to inform a person of the right to counsel results in a violation of due process.

9   The Supreme Court has long recognized that because a removal "visits a great hardship on the

10  individual and deprives him of the right to stay and live and work in this land of freedom[,] ⋯

11  [m]eticulous care must be exercised lest the procedure by which [an alien] is deprived of that liberty

12  not meet the essential standards of fairness." Bridges v. Wixon, 326 U.S. 135, 154 (1945). One way

13  we ensure that the "standards of fairness" are met is by guaranteeing that aliens have the opportunity

14  to be represented by counsel. "The high stakes of a removal proceeding and the maze of immigration

15  rules and regulations make evident the necessity of the right to counsel. The proliferation of

16  immigration laws and regulations has aptly been called a labyrinth that only a lawyer could

17  navigate." Biwot, 403 F.3d at 1099; citing Castro-O'Ryan v. INS, 847 F.2d 1307, 1312 (9th

18  Cir.1988).

19       The Ninth Circuit has found that persons in removal proceedings have a *right* to counsel. In

20  Castro-O'Ryan, 847 F.2d at 1312, the Court held, "No right to counsel under the Sixth Amendment

21  is recognized in deportation proceedings. But where the courts declined to see a constitutional

22  remedy, Congress saw a dictate to humanity." The Castro-O'Ryan Court, referring to section 8

23  U.S.C. § 1362 ("Right to Counsel") stated, "The legislative history of this provision confirms that

24  Congress wanted to confer a *right*. Id. (citing H.R. Rep. No. 1365, 82d Cong. 2nd Sess. 57,

25  *reprinted in* 1952 U.S. Code Cong & Admin. News 1653, 1712) (emphasis original).

26       In order to ensure that this critical right to counsel is complied with, the Ninth Circuit has

27  concluded that IJs must "provide aliens with reasonable time to locate counsel and permit counsel

28  to prepare for the hearing." Biwot, 403 F.3d at 1099; citing Rios-Berrios v. INS, 847 F.2d 1307,

1  1312 (9th Cir. 1988). Additionally, the Ninth Circuit has "reiterated many times that an alien cannot

2  appear pro se without a <u>knowing and voluntary</u> waiver of the right to counsel." <u>Biwot</u>, 403 F.3d at

3  1100; citing <u>Velasquez Espinosa v. INS</u>, 404 F.2d 544, 546 (9th Cir. 1968); <u>Tawadrus</u>, 364 F.3d at

4  1003 (emphasis added). "A waiver is generally not valid unless the IJ expressly asks the petitioner

5  whether he wishes to continue without a lawyer and receives a 'knowing and voluntary affirmative

6  response.'" <u>Biwot</u>, 403 F.3d at 1100; citing <u>Tawadrus</u>, 364 F.3d at 1003.

7  In this case, Mr. Arnoldo-Arevalo was denied his constitutional and statutory right to counsel

8  because the DHS failed to inform him of his right to counsel or inquire as to whether he wanted an

9  attorney present. These errors constitute an abuse of discretion and a violation of due process. <u>See</u>

10  <u>Tawadrus</u>, 364 F.3d at 1105; <u>see also</u> <u>Castro-O'Ryan</u>, 847 F.2d at 1312-13; <u>see also</u> <u>Reyes-Palacios</u>

11  <u>v. INS</u>, 836 F.2d 1154, 1155-56 (9th Cir. 1988) ("Petitioner was denied due process when the INS

12  failed to inquire 'whether petitioner waived his right to counsel, and, if not, whether there was

13  sufficient cause to grant petitioner more time to obtain counsel.' ") (quoting <u>Colindres-Aguilar v.</u>

14  <u>INS</u>, 819 F.2d 259, 261 (9th Cir. 1987)). Therefore, these proceedings violated Mr. Arnoldo-

15  Arevalo's right to due process.

16  **iv.    Mr. Arnoldo-Arevalo was not given a copy of free legal services.**

17  Mr. Arnoldo-Arevalo was not provided with a list of free legal services. <u>See</u> Exhibit C,

18  "Declaration of Luis Arnoldo-Arevalo in support of motion to dismiss the indictment." Immigration

19  regulations require the DHS to provide the alien with a list of available free legal services programs.

20  8 C.F.R. § 238.1; <u>see also</u> <u>Acewicz v. INS</u>, 984 F.2d 1056, 1062 (9th Cir. 1993) (the IJ must

21  determine whether the alien has received the list of free legal services and whether he desires

22  representation). The requirement that the INS inform defendants that free legal services exist must

23  be scrupulously observed. Furthermore, it is critical that this information be provided to defendants

24  in their native language. Otherwise, they cannot make meaningful use of it. <u>See</u> <u>He v. Ashcroft</u>, 328

25  F.3d 593, 598 (9th Cir. 2003) (citing <u>Perez-Lastor v. INS</u>, 208 F.3d 773, 778 (9th Cir. 2000)) ("[A]

26  competent translation is fundamental to a full and fair hearing. If an alien does not speak English,

27  deportation proceedings must be translated into a language the alien understands."). For example,

28  in <u>Ubaldo-Figueroa</u>, the Ninth Circuit affirmed the district court's conclusion that the INS violated

1    the defendant's due process rights because his removal proceedings were not translated into Spanish.

2    364 F.3d at 1047. As a result, the defendant "was not properly advised of the grounds on which he

3    was being deported, his possible eligibility of relief from deportation, or his right to appeal his

4    removal order in violation of his right to due process of law." Id. The Ninth Circuit found that these

5    due process violations prejudiced the defendant. Id. at 1050-51.  Moreover, the DHS's failure to

6    provide Mr. Arnoldo-Arevalo with a list of free legal services further compounded the errors of

7    improperly placing him in expedited proceedings and the failure to translate the Notice.  Therefore,

8    the failure to provide Mr. Arnoldo-Arevalo with the required of list of free legal services violated

9    his right to due process.

10             **b.    Mr. Arnoldo-Arevalo suffered prejudice at his removal hearing.**

11        Mr. Arnoldo-Arevalo suffered prejudice as a result of this due process violation.   To

12    demonstrate prejudice at his removal hearing, Mr. Arnoldo-Arevalo "does not have to show that he

13    actually would have been granted relief.  Instead, he must only show that he had a 'plausible' ground

14    for relief from deportation." Ubaldo-Figueroa, 364 F.3d 1042 at 1050 (internal citation omitted).

15    Once a defendant has made a prima facie showing of prejudice, it is the government burden "'to

16    demonstrate that the procedural violation could not have changed the proceedings' outcome.'"

17    United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003); see also Ortiz-Lopez, 385

18    F.3d at 1205 (quoting same).

19        In this case, Mr. Arnoldo-Arevalo suffered prejudice on a number of grounds.  First, the DHS

20    erred in determining that Mr. Arnoldo-Arevalo was subject to an expedited removal under section

21    1228 because of a conviction for an aggravated felony.  Based on the documents in the A-file, there

22    is not competent evidence to sustain this burden.  Thus, the proceedings should have been dismissed

23    against Mr. Arnoldo-Arevalo.[3]   Therefore, because the DHS lacked competent evidence of the

24

25        [3]      An unpublished Board of Immigration Appeals' opinion is instructive on this issue.
26    In In re: Philippe Louis Jean, 2005 WL 1104548, unpublished, (January 24, 2005), the respondent
      argued that the case should be dismissed because the IJ relied on conviction records which were
27    neither the original nor certified copies. In reviewing 8 U.S.C. § 1229a(c)(3)(B), the BIA concluded
      that "[t]he implication of this wording [in the statute] is that either an original or a certified copy of
28    a conviction record must be presented.  The document submitted by DHS is neither an original nor

1    alleged prior conviction, the proceedings should have been dismissed against Mr. Arnoldo-Arevalo,

2    and thus he suffered prejudice as result of this due process violation.[4]

3        Second, Mr. Arnoldo-Arevalo was denied his statutory and constitutional rights to counsel.

4    Mr. Arnoldo-Arevalo was not informed of his right to counsel, did not validly waive his right to

5    counsel, and was not provided with a list of free legal services.  These errors result in prejudice *per

6    se*.  See Strickland v. Washington, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the

7    assistance of counsel altogether is legally presumed to result in prejudice."); see also Biwot, 403

8    F.3d at 1100 ("With an attorney, [Biwot] would not have been forced to proceed pro se, to present

9

10    a certified copy. ... Moreover, we find that section 240(c)(3)(B)(vi) of the (INA) would swallow the
11    more specific requirement of the provisions of the Act in general.  Proof of official records is
      expressly provided for under the regulations at 8 C.F.R. § 287.6(a) (2004).  We therefore find that
12    this charged ground of error is sufficient to warrant both a sustaining of this appeal, and the
      termination of these proceedings."

13        In another unpublished BIA opinion, In re: Demetrio Amaya-Saenz, 2004 WL 2418641,
14    unpublished, (August 30, 2004), the respondent argued that the IJ erred in relying upon documents
      which did not comply with section 1229a(c)(3).  Specifically, "[W]hen a conviction record is
15    submitted by electronic means to the DHS from a state or court as proof of the respondent's ground
      of removability, the conviction record must be certified by a state or court official as an official
16    record from its repository and certified in writing by a DHS official as having been received
17    electronically." Citing 8 U.S.C. § 1229a(c)(3)(A), (C); 8 C.F.R. § 1003.41(c).  The BIA concluded
      that the "conviction record was not certified by a state or court official as an official record from its
18    repository; nor was it certified in writing by a DHS official as having been received electronically.
      Since the proper procedural requirements were not met in the respondent's case, we find that the
19    conviction record is not admissible as evidence to prove his criminal conviction. See sections
20    240(c)(3)(A), (C) of the Act; 8 C.F.R. § 1003.41(c). As such, the DHS failed to meet its burden of
      proving that the respondent was removable based on the charges in the Notice to Appear. As there
21    is no basis for the respondent's removal from the United States, we will sustain the respondent's
22    appeal and terminate removal proceedings."

23        [4]    However, even if Mr. Arnoldo-Arevalo was subject to the normal removal proceedings
      under section 1229a, prejudice is still established.  In a normal removal proceeding, it is certainly
24    plausible that Mr. Arnoldo-Arevalo would have been granted an opportunity to voluntarily leave the
      United States, because the DHS does not have competent evidence supporting a conviction for an
25    aggravated felony, Mr. Arnoldo-Arevalo would still be entitled to a fast-track voluntary departure.
      See 8 CFR § 1240.26(b)(1)(i)(E).  Thus, Mr. Arnoldo-Arevalo was prejudiced by the due process
26    violation at his 2006 removal hearing.  Mr. Arnoldo-Arevalo had a "plausible" basis for relief in
27    2006 because, based on the competent evidence in the A-file, he qualified for, and met all the
      regulatory requirements of, a form of relief.

28

a case with no evidence, to answer the IJ's inquiries without any idea of their legal significance, or to purport unwittingly to waive his appeal."). Moreover, at a minimum, the denial of the right to counsel resulted in prejudice because with the assistance of counsel, the case would have been transferred to an IJ because the DHS lacked competent evidence to subject him to an expedited removal. Therefore, the denial of counsel at the deportation hearing resulted in prejudice for Mr. Arnoldo-Arevalo.

Third, Mr. Arnoldo-Arevalo was prejudiced because he was never informed of the charges against him, was not given an opportunity to review the evidence against him, and was not afforded the opportunity to present evidence on his own behalf. Had Mr. Arnoldo-Arevalo been informed of the charges against him and had the opportunity to review the DHS's evidence, he would have been able to, at a minimum, demonstrate that the DHS had incompetent evidence to support an expedited removal. Therefore, Mr. Arnoldo-Arevalo was prejudiced by these violations.

Fourth, the court should not uphold the use of this type of informal proceedings as the basis for an element of an offense in a criminal proceeding. Prejudice should be presumed in a so-called proceeding before an immigration officer with no legal protections, based on United States v. Mendoza-Lopez, 481 U.S. 828, 95 L. Ed. 2d 772, 107 S. Ct. 2148 (1987). In Mendoza-Lopez, the Supreme Court reasoned that there must be "some meaningful review of the administrative proceeding" if it is "to play a critical role in the subsequent imposition of a criminal sanction." Id. at 837-38. The Mendoza-Lopez Court noted that there may be some procedural errors that are so fundamental "that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." Id. at 839 n.17. Here, subjection a long time resident of the United States to this type of informal, unrecorded, protectionless hearing is just the sort of fundamental unfairness the Supreme Court had in mind. As the Court said, "we have previously recognized, however, in the context of criminal proceedings, that 'some errors necessarily render a trial fundamentally unfair.'" Id. (quoting Rose v. Clark, 478 U.S. 570, 577, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986) (holding criminal adjudication by a biased judge renders trial fundamentally unfair)).

08-CR-0293

1    Fifth, the deportation officer did not even suggest to Mr. Arnoldo-Arevalo other forms of

2    relief. Specifically,  Mr. Arnoldo-Arevalo should have been advised that he could voluntarily

3    withdraw his application for admission and freely depart the country pursuant to 8 U.S.C. §

4    1225(a)(4), or that he could apply for a waiver under 8 U.S.C. § 1182(h)  as the father of three

5    children who are United States citizens.

6    Here, Mr. Arnoldo-Arevalo had plausible grounds that he was eligible for § 212(h) relief,

7    because he has lived in the United States for many years, he undoubtably has established many of

8    the equities of the § 212(h) waiver, would have been able to establish that his deportation would

9    cause an "extreme hardship" to family members, who are citizens of the United States.  8 U.S.C.

10   § 212(h)(1)(B) (formerly  § 212(h)(1)(B) of the Immigration and Nationality Act).

11   In Arrieta, the 9th Circuit Court of Appeals found that Mr. Arrieta had been prejudiced

12   because he showed plausible grounds for relief from deportation. 224 F.3d at 1080.  Mr. Arrieta

13   demonstrated that he was eligible for 212(h) relief as his family would have suffered an extreme

14   hardship had he been deported, and therefore had plausible grounds to obtain such relief.  Id., at p.

15   1082.  Mr. Arrieta's argument succeeded as his ties to is family exceeded the "typical"  economic

16   hardships to the family when the "bread-winner" is deported.  Id.  In addition to the financial loss

17   that his family would suffer, Mr. Arrieta produced evidence that "he provided essential emotional

18   and other non-economic familial support."  Id.  This primarily consisted of an affidavit from his

19   mother describing Mr. Arrieta's assistance in raising his younger siblings (as she was medically

20   unable to do so at times) as well as the personal loss his mother would suffer if he was deported.

21   Id.  The court concluded that the "effect of the deportation order would be separation rather than

22   relocation," and determined that Mr. Arrieta had been prejudiced by the defect in deportation

23   proceedings.  Id., at pp. 1082-83.

24   In this case, Mr. Arnoldo-Arevalo has plausible grounds that he would have been granted

25   relief under § 212(h).  Mr. Arnoldo-Arevalo has lived in the United States since he was a young

26   child, all his family is here, and he has no ties outside of the United States. If separated, his family

27   would lose essential economic, emotional and other non-economic familial support.  In addition, the

28   separation would disrupt his family's unity.  See Guitierrez-Centeno v. INS, 712 F.2d 401, 403 (9th

08-CR-0293

1  Cir. 1983) ([t]he existence of family ties in the United States is the most important factor in

2  determining hardship) (quoting <u>Arrieta</u>, 224 F.3d at 1082). Therefore, Mr. Arnoldo-Arevalo's due

3  process rights were violated by defects in his deportation proceeding, as he was given no opportunity

4  to obtain a waiver despite his apparent eligibility for § 212(h) relief.

5      Finally, even if this Court believes that the above errors are insufficient to prove prejudice,

6  then this Court should view the cumulative effect of these errors.  In cases where "no single trial

7  error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of

8  multiple errors may still prejudice a defendant." <u>United States v. Frederick</u>, 78 F.3d 1370, 1381 (9th

9  Cir.1996).  Here, all of the error above results, at a minimum, result in the outcome of the 2006

10  removal being fundamentally unfair.

11  **C.    Summation.**

12      Mr. Arnoldo-Arevalo's due process rights were violated at his removal proceedings in 2006.

13  He suffered prejudice as a result of that due process violation.  The government may not therefore

14  use Mr. Arnoldo-Arevalo's 2006 removal as a basis for its prosecution.  As there is no other removal

15  orders on which the government may rely, Mr. Arnoldo-Arevalo requests that this Court dismiss the

16  indictment against him.

17

18                                          **III.**

19                      **MOTION TO COMPEL DISCOVERY**

20      Mr. Arnoldo-Arevalo requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4)

21  and 16:

22      (1) all written and oral statements made by Mr. Arnoldo-Arevalo.  This request includes, but

23  is not limited to, any rough notes, records, reports, transcripts or other documents in which

24  statements of Mr. Arnoldo-Arevalo are contained.  It also includes the substance of any oral

25  statements which the government intends to introduce at trial.  These are all discoverable under Fed.

26  R. Crim. P. 16(a)(1)(A) and (B) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Mr. Arnoldo-Arevalo

27  also requests any response to any <u>Miranda</u> warnings which may have been given to him.  <u>See</u> <u>United</u>

28  <u>States v. McElroy</u>, 697 F.2d 459 (2d Cir. 1982);

1 (2) all documents, statements, agents' reports, and tangible evidence favorable to Mr.

2 Arnoldo-Arevalo on the issue of **guilt or punishment** and/or which affects the credibility of the

3 government's case.  This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83,

4 87 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

5 (3) all evidence, documents, records of judgments and convictions, photographs and tangible

6 evidence, and information pertaining to any prior arrests and convictions or prior bad acts.  Evidence

7 of prior record is available under Fed. R. Crim. P. 16(a)(1)(D).  Evidence of prior similar acts is

8 discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  Mr. Arnoldo-

9 Arevalo specifically requests reasonable notice pursuant to Fed. R. Evid 404(b) of at least four

10 weeks prior to trial, of any evidence the government intends to introduce at trial under this rule;

11 (4)  all evidence seized as a result of any search, either warrantless or with a warrant, in this

12 case.  He also specifically requests copies of all photographs, videotapes or recordings made in this

13 case.  This is available under Fed. R. Crim. P. 16(a)(1)(E);

14 (5)  all arrest reports, investigator's notes, memos from arresting officers, sworn statements

15 and prosecution reports pertaining to Mr. Arnoldo-Arevalo, including notes taken by the

16 immigration officers.  These are available under Fed. R. Crim. P. 16(a)(1)(B) and (E), Fed. R. Crim.

17 P. 26.2 and 12(I), and includes a request for his A-file;

18 (6)  the personnel file of the interviewing agent(s) containing any complaints of assaults,

19 abuse of discretion and authority and/or false arrest.  Pitchess v. Superior Court, 11 Cal. 3d. 531,

20 539 (1974).  In addition, the defense requests that the prosecutor examine the personnel files of all

21 testifying agents, and turn over Brady and Giglio material reasonably in advance of trial.  United

22 States v. Henthorn, 931 F.2d 29, 30-31(9th Cir. 1991).  If the prosecutor is unsure as to whether the

23 files contain Brady or Giglio material, the files should be submitted to the Court, in camera.  Id.  The

24 prosecution should bear in mind that there exists an affirmative duty on the part of the government

25 to examine the files.  Id.

26 (7) any and all statements made by any other uncharged co-conspirators. The defense is

27 entitled to this evidence because it is material to preparation for the defendant's case and potentially

28 Brady material.  Also, insofar as such statements may be introduced as co-conspirator statements,

they are discoverable. Fed. R. Crim. 16(a)(1)(A) and <u>Brady</u>. This evidence must be produced pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976);

(8)  Mr. Arnoldo-Arevalo requests copies of any and all audio/video tape recordings made by the agents in this case and any and all transcripts, including taped recordings of any conversations of any of the agents involved in this case.  This evidence is available under Fed. R. Crim. P. 16(a)(1)(E);

(9)  Mr. Arnoldo-Arevalo specifically requests the name and last known address of each prospective government witness.  See <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(10)  all other documents and tangible objects, including photographs, books, papers, documents, photographs, or building or places or copies of portions thereof which are material to Mr. Arnoldo-Arevalo's  defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Arnoldo-Arevalo. Rule 16(a)(1)(E); Mr. Arnoldo-Arevalo requests the opportunity to inspect, copy, and photograph all documents and tangible objects which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to him.  <u>See</u> Fed. R. Crim. P. 16(a)(1)(E)

(11) all results or reports of scientific tests or experiments, or copies of which are within the possession, control, or custody of the government or which are known or become known to the attorney for the government, that are material to the preparation of the defense, including the opinions, analysis and conclusions of experts consulted by law enforcement including finger print specialists in the instant case.  These must be disclosed, once a request is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro. 16(a)(1)(F). Moreover, the government is specifically requested to provide a written summary of any testimony the government intends to use under Federal Rules of Evidence 702, 703, and 705, pursuant to  Fed.R.Crim.Pro. 16(a)(1)(G).

(12)  any express or <u>implicit</u> promise, understanding, offer of immunity, of past, present, or

future compensation, agreement to execute a voluntary return rather than deportation or any other kind of agreement or understanding between <u>any</u> prospective government witness and the government (federal, state and local), including any implicit understanding relating to criminal or civil income tax liability. <u>United States v. Shaffer</u>, 789 F.2d 682 (9th Cir. 1986); <u>United States v. Risken</u>, 788 F. 2d 1361 (8th Cir. 1986); <u>United States v. Luc Levasseur</u>, 826 F.2d 158 (1st Cir. 1987);

(13) any discussion with a potential witness about or <u>advice</u> concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed. <u>Brown v. Duggen</u>, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that witness sought plea bargain is to be disclosed, even if no deal struck); <u>Haber v. Wainwright</u>, 756 F.2d 1520, 1524 (11th Cir. 1985);

(14) any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. <u>See</u> Rule 608(b), Federal Rules of Evidence and <u>Brady</u>;

(15) any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir.), <u>cert. denied</u>, 474 U.S. 945 (1985); and,

(16) any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. July 11, 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980);

(17) the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1469 (9th Cir. 1984);

(18) Mr. Arnoldo-Arevalo requests a transcript of the grand jury testimony and rough notes of all witnesses expected to testify <u>at the motion hearing</u> or at trial. This evidence is discoverable under Fed. R. Crim. P. 12(I) and 26 and will be requested.

(19) <u>Jencks Act Material</u>. The defense requests all material to which defendant is entitled

08-CR-0293

1  pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch

2  tapes.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness'

3  interview is sufficient for the report or notes to qualify as a statement under §3500(e)(1). Campbell

4  v. United States, 373 U.S. 487, 490-92 (1963).  In United States v. Boshell, 952 F.2d 1101 (9th Cir.

5  1991), the Ninth Circuit held that when an agent goes over interview notes with the subject of the

6  interview the notes are then subject to the Jencks Act.  The defense requests pre-trial production of

7  Jencks material to expedite cross-examination and to avoid lengthy recesses during the pre-trial

8  motions hearings or trial.

9

10                                              **IV.**

11                        **MOTION TO SUPPRESS STATEMENTS**

12        At this time, the government has failed to identify all statements it may seek to introduce at

13  trial. Mr. Arnoldo-Arevalo, therefore moves to suppress all statements which the government may

14  seek to introduce.

15  **A.    The Government must Demonstrate Compliance with _Miranda_.**

16        In order for any statements made by Mr. Arnoldo-Arevalo to be admissible against him, the

17  government must demonstrate that they were obtained in compliance with the Miranda decision.

18        **1.    Mr. Arnoldo-Arevalo's waiver must be voluntary, knowing, and intelligent.**

19        The question remains whether Mr. Arnoldo-Arevalo's waiver was voluntary, knowing, and

20  intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973).  When interrogation continues

21  without the presence of an attorney, and a statement results, the government has a heavy burden to

22  demonstrate that the defendant has intelligently and voluntarily waived his privilege against self-

23  incrimination.  Miranda, 384 U.S. at 475.  The court must indulge every reasonable presumption

24  against waiver of fundamental constitutional rights, so the burden on the government is great.

25  United States v. Heldt, 745 F. 2d 1275, 1277 (9th Cir. 1984).

26        In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the

27  totality of the circumstances surrounding the case.  Edwards v. Arizona, 451 U.S. 477 (1981);

28  United States v. Garibay, 143 F.3d 534 (9th Cir. 1998).  The Ninth Circuit has held that

determination of the validity of a <u>Miranda</u> waiver requires a two prong analysis:  the waiver must be both (1) voluntary and (2) knowing and intelligent.  <u>Derrick v. Peterson</u>, 924 F. 2d 813 (9th Cir. 1990).  The second prong requires an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Id.</u> at 820-821 (quoting <u>Colorado v. Spring</u>, 479 U.S. 564, 573 (1987)).  Not only must the waiver be uncoerced, then, it must also involve a "requisite level of comprehension" before a court may conclude that <u>Miranda</u> rights have been legitimately waived.  <u>Id.</u> (quoting <u>Colorado v. Spring,</u> 479 U.S. at 573).

Unless and until <u>Miranda</u> warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used against the defendant.  <u>Miranda</u>, 384 U.S. at 479.  The government in this case must prove that Mr. Arnoldo-Arevalo waived his rights intelligently and voluntarily.  Mr. Arnoldo-Arevalo disputes any allegation that his waiver was knowing, intelligent, and voluntarily.

**2.      Mr. Arnoldo-Arevalo's statements must be voluntary.**

Even if Mr. Arnoldo-Arevalo's statements were made after a voluntary, knowing, and intelligent waiver, they must have been made voluntarily, or they must be suppressed.  The Supreme Court has held that even where the procedural safeguards of <u>Miranda</u> are satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded on involuntary statements.  <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v. Denno</u>, 378 U.S. 368, 387 (1964); <u>see also</u> <u>United States v. Davidson</u>, 768 F.2d 1266, 1269 (11th Cir. 1985)("an accused is deprived of due process if his conviction rests wholly or partially upon an involuntary confession, even if the statement is true, and even if there is ample independent evidence of guilt.").  The government has the burden of proving that statements are voluntary by a preponderance of the evidence.  <u>Lego v. Twomey</u>, 404 U.S. 477, 483 (1972).  An accused's confession must result from an "independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him."  <u>Martin v. Wainwright</u>, 770 F. 2d 918, 924 (11th Cir. 1985), <u>modified</u>, 781 F. 2d 185 (11th Cir.) (quotations omitted).

1      To be considered voluntary, a statement must be the product of a rational intellect and a free

2  will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will

3  was overborne in a particular case, the court must consider the totality of the circumstances.

4  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).[5] A confession is deemed involuntary not

5  only if coerced by physical intimidation, but also if achieved through psychological pressure. "The

6  test is whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any

7  direct or implied promises, however slight, [or] by the exertion of any improper influence.'" Hutto

8  v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897));

9  accord, United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981). Here, Mr. Arnoldo-Arevalo's

10  statements were involuntary. An evidentiary hearing in this case will reveal this case is

11  indistinguishable from United States v. Tingle, 658 F.2d 1332 (9th Cir. 1981). Accordingly,

12  suppression of Mr. Arnoldo-Arevalo's statements is required.

13  **B.      This Court Must Conduct an Evidentiary Hearing.**

14      Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the

15  jury, whether any statements made by Mr. Arnoldo-Arevalo are voluntary. In addition, section

16  3501(b) requires this Court to consider various enumerated factors, including whether Mr. Arnoldo-

17  Arevalo understood the nature of the charges against him and whether he understood him rights.

18  Without evidence, this Court cannot adequately consider these statutorily mandated factors.

19      Moreover, section 3501(a) requires this Court to make a factual determination. Where a

20  factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P.

21  12. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression

22  hearings are often as important as the trial itself,'" Id. at 610 (quoting Waller v. Georgia, 467 U.S.

23  39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated

24

25      [5]   Among the factors which are considered are the youth of the accused, his lack of

26  education, his low intelligence, the lack of any advice to the accused of his constitutional
rights, the length of the detention, the repeated and prolonged nature of questioning, and

27  the use of physical punishment such as deprivation of food or sleep.

28

1  recitation of purported evidence in a prosecutor's responsive pleading.

2      If this Court believes that there is not a sufficient basis to grant an evidentiary hearing, then

3  Mr. Arnoldo-Arevalo respectfully requests to supplement this record once the government informs

4  him what statements, if any, it will seek to introduce at trial.

5                                    **V.**

6                  **MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

7      Defense counsel has received some discovery, and anticipates more will be disclosed, and

8  therefore there will be a need to file further motions.  Because of this, Mr. Arnoldo-Arevalo hereby

9  requests leave to file further motions.

10                                   **VI.**

11                               **CONCLUSION**

12     For the reasons stated, Mr. Arnoldo-Arevalo requests that this Court grant his motions.

13                                Respectfully submitted,

14

15 Dated: February 25, 2008                 /s/ Robert L. Swain
16                                          **ROBERT L. SWAIN**
                                            Attorneys for Mr. Arnoldo-Arevalo

17

18

19

20

21

22

23

24

25

26

27

28