KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant U.S. Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR0293-LAB |
| Plaintiff, | Date: March 17, 2008<br>Time: 2:00 p.m. |
| v. | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| LUIS ARNOLDO-AREVALO, | |
| Defendant. | (1) DISMISS INDICTMENT DUE TO INVALID DEPORT;<br>(2) COMPEL DISCOVERY;<br>(3) SUPPRESS STATEMENTS; AND<br>(4) GRANT LEAVE TO FILE FURTHER MOTIONS |
| | TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES AND |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt, United States Attorney, and A. Dale Blankenship, Assistant U.S. Attorney, hereby files its Response and Opposition to the motions filed on behalf of Luis Arnoldo-Arevalo (Defendant"). This Response and Opposition is based upon the files and records of this case.

//

//

//

**I**

**STATEMENT OF THE CASE**

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with attempted entry into the United States after deportation, in violation of Title 8, United States Code, Section 1326. Defendant was arraigned on the Indictment on February 7, 2008, and entered a not guilty plea.

**II**

**STATEMENT OF FACTS**

**A.    INSTANT OFFENSE**

On January 9, 2008, at approximately 8:50 a.m., Defendant made application for admission to enter the United States from Mexico, at the San Ysidro Port of Entry via the pedestrian lanes. Defendant approached Customs and Border Protection ("CBP") Officer Emmanuel Arambulo and presented a border crossing card (DSP-150) bearing the name "Augustin Gonzalez Torres". Officer Arambulo immediately determined that the document was a counterfeit. Officer Arambulo then asked Defendant if he had any other identification cards. Defendant handed Officer Arambulo a counterfeit Mexican driver license and counterfeit Mexican voter card. Officer Arambulo asked Defendant where he was going and Defendant responded that he was going to San Ysidro to go shopping. Officer Arambula then escorted Defendant to pedestrian secondary.

At approximately 9:15 a.m., CBP Officer Pham Johnson obtained Defendant's fingerprints and entered them into the IAFIS and IDENT databases. The records checks revealed that Defendant had a significant criminal history. Officer Johnson notified the prosecutions unit, and members of the prosecutions unit took custody of Defendant.

CBP prosecutions officers conducted queries of Immigration Service records including the Central Index System and the Deportable Alien Control System. This records check revealed that Defendant was a citizen of Mexico with no legal documents to enter the United States. This system check also revealed that Defendant had been administratively removed from the United States to Mexico on February 21, 2006. This records check also confirmed that Defendant has never applied for permission to legally enter the United States.

1  **B.    POST-MIRANDA STATEMENT**

2  At approximately 1:25 p.m., CBP Officer Jorge Rosario conducted a videotaped interview
3  with Defendant. The interview was witnessed by CBP Officer Carla Saco. Officer Rosario read
4  Defendant his Miranda rights in the Spanish language. Defendant acknowledged his Miranda rights
5  both verbally and in writing. Defendant agreed to speak to Officer Rosario and indicated that he
6  would make a statement by signing a written waiver of his Miranda rights. Defendant appeared to
7  be alert and coherent while he was questioned. Defendant did not appear to be ill or under the
8  influence of drugs or alcohol.

9  Defendant stated that he has been in the United States since he was five years old. Defendant
10 stated that he lived with his aunt in Los Angeles for the last 20 years, and that he has worked in the
11 construction business since age 9. Defendant stated that he understands that he has no documents
12 to live or enter the United States. Defendant also admitted that he has a 2000 felony conviction for
13 rape and that he served 5 years and 2 months in prison. Defendant stated that while he was in
14 prison, an immigration officer spoke with him. Defendant stated that he was removed from the
15 United States in 2006 by United States Immigration and Customs Enforcement Officers and that he
16 was turned over to Mexican Immigration Officers.

17 Defendant stated that he spoke with his parole officer about how he could return to the
18 United States, but that he never applied for documents to enter the United States. Defendant stated
19 that approximately 8 months ago, he asked a friend "Raul" for documents to enter the United States.
20 "Raul" provided Defendant with counterfeit documents and Defendant was to pay "Raul" $200.00
21 at a later date. Defendant stated that he intended to enter the United States to go shopping in Chula
22 Vista.

23 Defendant admitted that has no documents that would allow him to enter the United States
24 and he also stated that he knows that he needs legal documents to enter the United States. Defendant
25 also admitted that he was removed from the United States in 2006 and that he was not allowed to
26 enter the United States after that.

27 //
28 //

### C.    **DEFENDANT'S CRIMINAL HISTORY**

On January 26, 2001, Defendant was convicted of forcible rape in violation of Cal. Penal Code § 261(A)(2). Defendant was sentenced to 6 years' prison.

### D.    **DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a citizen of Mexico and he has never had permission to enter the United States, even though he entered illegally as a child in 1989.

While Defendant was serving his sentence in Centinela State Prison in Imperial, California, Deportation Officer Christopher Salgado began the process to determine Defendant's citizenship. On February 6, 2006, Officer Salgado visited Defendant at the Centinela State Prison to complete the I-213 immigration document. All of the documents associated with Defendant's removal are attached as Exhibit 1. Officer Salgado interviewed Defendant and documented Defendant's full name, date of birth, country of origin, and immigration status. Officer Salgado determined that Defendant had been convicted of an aggravated felony, had no lawful immigration status in the United States, and was eligible for removal without any entitlement to relief.

On February 7, 2006, the Department of Homeland Security issued a Notice of Intent to Issue a Final Administrative Removal Order. The Notice allegation section charged that Defendant had entered the United States from Mexico without being lawfully admitted, and that Defendant was deportable because he had been convicted of an aggravated felony, forcible rape.

On February 10, 2006, Immigration Enforcement Agent Fernando Valenzuela, an immigration official, explained to Defendant, in person, that the administrative record established that Defendant was deportable, and ineligible for any relief from removal. This conversation took place in Spanish. Defendant expressly waived his right to rebut and contest the allegations and waived his right to file a petition for review of the final removal order. Defendant signed this form on February 10, 2006, and checked two boxes admitting that he was deportable and waiving his right to contest the charges. Defendant chose to be removed to Mexico.

The proceedings culminated in a Final Administrative Removal Order. Johnny Williams, the SDDO for Operations, signed the Final Administrative Removal Order. When Defendant was released from state prison after serving his forcible rape sentence, the removal order was executed

on February 21, 2006, the date when he was physically removed through the Calexico, California, port of entry.

## III

## DISCUSSION

### A. DEFENDANT'S ADMINISTRATIVE REMOVAL WAS VALID

#### 1. Introduction

Defendant asserts in his motion to dismiss the Indictment that his deportation was invalid because it stemmed from an administrative removal order. Defendant asserts that he was denied due process through this removal proceeding. An alien must demonstrate three things before he or she can collaterally attack a prior removal: "(1) exhaustion of available administrative remedies to seek relief from the deportation order; (2) improper deprivation of an opportunity for judicial review; and (3) fundamental unfairness of the underlying removal order." United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); see also 8 U.S.C. § 1326(d). A removal order is "fundamentally unfair" if (1) due process was violated by defects in the alien's removal hearing, and (2) the alien suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004); see also Pallares-Galan, 359 F.3d at 1095. Prejudice can only be demonstrated if Defendant shows that he had plausible grounds for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998). Defendant's arguments concerning these prerequisites are legally precluded by Ninth Circuit cases and factually unsupportable.

#### 2. Defendant's Motion Should be Denied Without an Evidentiary Hearing

The Court should deny the motion to dismiss without an evidentiary hearing. Under Ninth Circuit precedent and Southern District Local Criminal Rule 47.1(g)(1), a defendant is entitled to an evidentiary hearing on a motion only when the defendant puts forth, in a declaration, sufficient facts to require a factual finding. United States v. Batiste, 868 F.2d 1089, 1098 (9th Cir. 1989) ("defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing."). "A hearing will not be held on a defendant's pretrial motion to suppress merely because a defendant wants one.

1  Rather, the defendant must demonstrate that a 'significant disputed factual issue exists such that a
2  hearing is required.'" United States v. Howell, 231 F.3d 615, 621(9th Cir. 2000) (citations omitted).
3  The essential facts surrounding the administrative deportation hearings are not contested.
4  The only account of the proceedings that is challenged is defense counsel's argument that the no one
5  read key provisions of removal documents or comprehensively explained the documents to the
6  Defendant in Spanish. This factual assertion is contained in Defendant's exhibit "C", which is a
7  declaration from Defendant. Defendant's declaration also alleges that he does not speak or read
8  English fluently, in spite of his claimed 20 year residency in the United States. Otherwise, the
9  exhibits supporting Defendant's motion in this case place no facts at issue. The Defendant's
10 assertion that the Immigration Service lacked proper documents to determine that Defendant
11 suffered an aggravated felony is mere speculation and also without merit. The government is
12 attaching the immigration documents, which indicate that the Notice of Intent to Issue a Final
13 Administrative Order was served or explained to the Defendant in Spanish.
14 This motion to dismiss the Indictment essentially is a legal dispute, where most of the facts
15 are not contested. The only fact put into dispute, is whether the Notice of Intent to Issue a Final
16 Administrative Order was served or explained to the Defendant in Spanish. From the face of the
17 document attached at Government's Exhibit 1, p. 4., it appears that the forms were explained to the
18 Defendant in Spanish.

19 **3.   Administrative Removals Are Acceptable Forms of Removal**

20 Aggravated felons are subject to expedited administrative removal. See 8 U.S.C. § 1228(b);
21 United States v. Hernandez-Vermudez, 356 F.3d 1011, 1012 (9th Cir. 2004). Proceedings under §
22 1228(b) are governed by 8 C.F.R. § 238.1. Under § 238.1, removal proceedings commence when
23 the alien is served with the Notice of Intent in conformance with 8 C.F.R. §§ 103.5a(a)(2) &
24 103.5a(c)(2). See 8 C.F.R. § 238.1(b)(2)(I).
25 The Ninth Circuit has held that absent a showing of a due process violation and prejudice,
26 the Government may rely on a deportation pursuant to a Final Administrative Removal Order in
27 prosecuting a defendant under 8 U.S.C. § 1326. United States v. Garcia-Martinez, 228 F.3d 956 (9th
28 Cir. 2000). Garcia argued that the his administrative removal pursuant to 8 U.S.C. § 1228 could

1  not be used as an element of his offense of illegal entry because the proceeding was conducted by
2  an inherently biased adjudicator. Id. at 960. The Ninth Circuit engaged in a detailed analysis of the
3  expedited removal process and concluded that, in light of precedent from other circuits and the
4  Supreme Court, Garcia's arguments concerning the institutional bias of the INS officials in charge
5  of expedited removals lacked merit. Id. at 961-963. Nowhere in the Garcia-Martinez, opinion did
6  the Ninth Circuit suggest that the expedited removal statutes were subject to challenge under general
7  due process or equal protection principles.

8  More recently, the Ninth Circuit again upheld the expedited removal statute, this time in the
9  face of a challenge based on statutory construction. In United States v. Hernandez-Vermudez, 356
10 F.3d 1011 (9th Cir. 2004), the defendant challenged his expedited removal on grounds that the
11 statute authorized such removals only for aliens who were "admitted" into the country, not those
12 who entered illegally. The Court rejected that argument, concluding that Congress intended the
13 expedited removal provision to apply to only aggravated felons, but regardless of whether they
14 entered legally or illegally. Id. at 1013-1015.

15 Were there any doubt about the validity of the administrative removal process, the Ninth
16 Circuit put that doubt to rest in the recent published case of U.S. v. Calderon-Segura, 512 F.3d 1104
17 (9th Cir. 2008). In Calderon-Segura, the Ninth Circuit held:

> We agree with the Fifth and Eighth Circuits that a rational basis exists for granting the Attorney General discretion to place some non-LPR aggravated felons into expedited removal proceedings and others into potentially more lenient general removal proceedings. Gonzalez v. Chertoff, 454 F.3d 813, 818 (8th Cir.2006); Flores-Ledezma v. Gonzales, 415 F.3d 375, 381-82 (5th Cir.2005). As those courts have recognized, the aliens described in § 1228(b) "include many persons who could rationally be granted special deference and courtesy under the immigration laws: ambassadors, diplomats, employees of foreign governments, journalists, scholars, teachers, and professors, among others." Flores-Ledezma, 415 F.3d at 381, quoted in Gonzalez, 454 F.3d at 818. To paraphrase our decision in Taniguchi, 303 F.3d at 958, although it might have been wiser, fairer, and more efficacious for Congress to have deemed all non-LPR aggravated felons ineligible for the benefits available in general removal proceedings, the decision of Congress was nonetheless a rational first step towards the legitimate goal of rapidly removing criminal aliens. We therefore conclude that 8 U.S.C. § 1228(b)(1) does not violate equal protection.

26 Id. at 1107-08.
27 //
28 //

**4.      The Immigration Service Had Documentation of Defendant's Conviction**

In his Motion, Defendant makes the novel, completely unsupported argument that his due process rights were violated because the Immigration Service did not have adequate documentation of his aggravated felony conviction to support his administrative removal. A variety of documents in Defendant's A-file, including his record of judgment and commitment, were certified by an immigration official as being "true and correct cop(ies) of court certified documents on file with the California Department of Corrections." See Government Exhibit 2, Abstract of Judgment – Prison Commitment.

Defendant's argument completely ignores the facts and circumstances surrounding his administrative removal. At the time of his removal, Defendant was in the custody of the California Department of Corrections at Centinela State Prison. The Department of Homeland Security ("DHS") official who handled Defendant's removal therefore reviewed, and had access to, "[a]ny document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution," as dictated under 8 U.S.C. § 1229a(c)(3)(B). This is abundantly clear, because the very certification Defendant challenges indicates that the documents in Defendant's A-file are "true and correct cop(ies) of court certified documents on file with the California Department of Corrections." Defendant confuses the documents which were relied upon to remove Defendant – which were on file with the penal institution where Defendant was incarcerated and reviewed by a DHS official – with the documents in his A-file, which simply evidenced the DHS official's review process. In other words, the "proof of a criminal conviction" relied upon pursuant to § 1229a(c)(3)(B) was contained in the official documents maintained by prison officials, not the documents in Defendant's A-file. Defendant's argument is meritless.

Furthermore, the DHS official also relied upon "[a]n official record of judgment and conviction" in the removal process. As noted above, the documents in Defendant's A-file were "true and correct cop(ies) of court certified documents" (emphasis added). Defendant's argument that this was somehow improper because the DHS official "only certified that these documents are 'true and correct cop[ies]' of copies," is nonsensical. Although the copies in Defendant's A-file might have been "copies of copies," the DHS official must have examined an actual court-certified record in the

removal process. We know this because he was able to make a copy of that record! Again, 8 U.S.C. § 1229a(c)(3)(B) concerns the documents relied upon to remove Defendant, not the documents that may later end up in his A-file.

This all aside, Defendant completely misconstrues 8 C.F.R. § 1003.41(b), which makes clear that "a copy of any such document or record may be submitted if it is attested in writing by an immigration officer to be a true and correct copy of the original." The "original" is not simply the actual record of judgment and conviction signed by the state court judge; it is any of the documents discussed in 8 U.S.C. § 1229a, which are by the very language of the statute "documents or records (or a certified copy of such an official document or record)" (emphasis added). Thus, completely contrary to Defendant's argument, the DHS official could have relied on what, technically, might have been a "copy of a copy."

Suffice it to say, the touchstone of these statutes and regulations is surely to ensure that the DHS official removing an aggravated felon is basing his or her decision on reliable information. Defendant's argument that a DHS official cannot rely on what he or she knows to be a certified copy of an official court document is completely unsupported, and Defendant's contentions on this issue should be rejected.

### 5. There Was No Denial of Due Process

The form I-851 contains a certificate of service form that indicated that Agent Valenzuela served the Notice of Intent on the Defendant, that he did so in person, and that he did so in Spanish. Defendant acknowledged that he received the notice as evidenced by his signature and fingerprint, placed adjacent to his signature. The form indicates that Defendant was informed, in person, that he had a right to contest the removal order. Defendant did not contest his deportability; but instead indicated his admission of the allegations and charge in the Notice of Intent. This also is evidenced by Defendant's signature and fingerprint. Nowhere in the record is there evidence that lawful procedures were not followed, so Defendant was not denied due process of law.

### 6. Defendant Was Not Denied His Right to Counsel

Defendant asserts that his rights to counsel were violated because he was not advised of his right to an attorney. This assertion is contradicted by the plain language of the Notice of Intent,

Form I-851. On the first page of the Notice of Intent under the section entitled "Your Rights and Responsibilities" is the following language:

> You may be represented (at no expense to the United States government) by counsel, authorized to practice in this proceeding. If you wish legal advice and cannot afford it, you may contact legal counsel from the list of available free legal services provided to you.

Exhibit 1, p. 4. Defendant was, therefore, informed of his right to counsel, but chose not to obtain an attorney to represent him.

### 7.   Defendant Did Not Exhaust his Administrative Remedies

In order to successfully collaterally attack a prior removal order, a defendant must demonstrate that he exhausted his administrative remedies. United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); see also 8 U.S.C. § 1326(d). Defendant chose not to contest his removal. Defendant also specifically did not choose to request withholding or deferral of removal on the grounds of asylum or the Convention Against Torture. Defendant never pursued his administrative remedies, and therefore has not satisfied one of the prongs of a 1326(d) challenge.

### 8.   Defendant Was Not Prejudiced by his Order of Removal

Furthermore, even if there had been a violation of Defendant's due process rights, he would still be unable to show prejudice. Defendant does not contest that he was convicted of an aggravated felony or that he entered the country without inspection. Under such circumstances, he is not eligible for "any relief from removal that the Attorney General may grant in the Attorney General's discretion." INA § 238(b)(5). First, Defendant is an aggravated felon, which means he is conclusively presumed to be subject to removal and is ineligible for cancellation of removal, voluntary departure, and registration as a permanent resident alien. See United States v. Espinoza-Farlo, 34 F.3d 469, 471-472 (7th Cir. 1994). When we add to the obstacles imposed by virtue of that status the effect of § 1228(b)(5)'s exclusion of aliens removed under the expedited procedures from "any relief from removal that the Attorney General may grant in the Attorney General's discretion," the absence of prejudice is deducible almost as a matter of law. See United States v. Garcia-Martinez, 228 F.3d 956, 963 (9th Cir. 2000) (holding that for alien convicted of

1  aggravated felony and placed in expedited procedures under § 1228, removal is "foregone
2  conclusion"); United States v. Benitez-Villafuerte, 186 F.3d 651, 659 (5thCir. 1999) (same).

3  Under 8 U.S.C. § 1227(a)(2)(A)(iii), any "alien who is convicted of an aggravated felony at
4  any time after admission is deportable."  No alien deportable as an aggravated felon under that
5  section "shall be eligible for any relieve from removal that he Attorney General may grant in the
6  Attorney General's discretion."  8 U.S.C. § 1228(b)(5).  There simply is no way for Defendant to
7  establish any prejudice because he was not eligible for any relief from deportation.  See Garcia-
8  Martinez, 228 F.3d at 964 (finding that defendant needed to show actual prejudice rather than
9  "assumed" prejudice, and that defendant could not do so because the official removing him had no
10 discretionary authority to grant relief from deportation in light of defendant's prior rape conviction).

11 Defendant asserts that he was prejudiced because he was not advised of his right to § 212(h)
12 relief. The Ninth Circuit has already held that to establish prejudice, an alien must show that he had
13 "plausible grounds" for discretionary relief at the time of his removal.  United States v. Arce-
14 Hernandez, 163 F.3d 559, 563 (9th Cir. 1998); see also United States v. Ortega-Ascanio,
15 376 F.3d 879, 887 (9th Cir. 2004) (alien in illegal re-entry case who collaterally attacks underlying
16 removal must show "a plausible claim for discretionary relief").  Because Defendant was convicted
17 of an aggravated felony, he was not eligible for any relief from deportation.  Defendant was not,
18 therefore, prejudiced by a failure to be advised of this form of discretionary relief.

19 Defendant's assertion that he was prejudiced because he was not advised that he could
20 withdraw his application for admission is also without merit. The Ninth Circuit has considered this
21 claim that an alien should be advised that he can withdraw his request for admission.  In United
22 States v. Calderon-Segura, 512 F.3d 1104 (9thCir. 2008) the court considered Calderon-Segura's
23 contention that his due process rights were violated because he was not advised that he could
24 voluntarily withdraw his application for admission and freely depart the United States pursuant to
25 8 U.S.C. § 1225(a)(4). As noted by the court, even if Calderon-Segura might have been otherwise
26 qualified for relief, it did not constitute a plausible ground for relief from deportation.  The court
27 determined this specific form of relief was expressly conditioned on the Attorney General's exercise
28 of discretion, and because Calderon-Segura was a non-LPR aggravated felon in expedited removal

proceedings, he was statutorily ineligible for relief. The court held that the agencies failure to advise him discretionary relief that he was statutorily barred from obtaining neither violated his due process rights, nor was it prejudicial. Id. at 1108.

## B.   THE GOVERNMENT WILL COMPLY WITH ALL DISCOVERY OBLIGATIONS

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal Rules of Criminal Procedure.[1] To date, the United States has produced 82 pages of discovery and one cd to Defendant's counsel including investigative reports. In addition Defendant's counsel was was provided the opportunity to review Defendant's A-file and was provided discovery of documents contained within the A-file. As of today, the United States has received no reciprocal discovery. The Government anticipates that all discovery issues can be resolved amicably and informally, and requests that no order be entered compelling specific discovery in light of the Government's position below.

### 1.   **Defendant's Statements**

The United States recognizes its obligation under Federal Rules of Criminal Procedure ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant his written statements and the substance of Defendant's oral statements. The United States has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States discovers additional oral or written statements that require disclosure under the relevant Rules, such statements will be promptly provided to Defendant.

### 2.   **Arrest Reports**

The United States does not object to this request and has already produced to Defendant all arrest reports known to the Government at this time.

//

//

---

[1]   Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.

### 3. Prior Record

The United States has provided Defendant with a copy of his known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to the Defendant's prior criminal record, those will be promptly provided to Defendant.

### 4. Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

### 5. Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 6. Preservation of Evidence

As stated above, the United States will preserve all evidence to which the Defendant is entitled pursuant to the relevant discovery rules.

### 7. Reports of Examinations and Tests

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

### 8. Expert Witnesses

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial

under Federal Rules of Evidence 702, 703 or 705. The Government hereby notifies Defendant that it intends to introduce expert testimony regarding fingerprint comparison to establish that the Defendant's fingerprint appears on several of his immigration documents.

### 9. Brady Material

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).

### 10. Giglio Material

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

### 11. Henthorn Material

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

### 12. Jencks Act Material

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

### 13. Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in camera

inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness involved in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

### 14. 404(b) Material

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

### 15. Witnesses

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced.

### 16. Alien File

The United States will make Defendant's A-file available for inspection at a time mutually convenient to the parties and will continue to perform its duty under Brady and the discovery rules to disclose all material exculpatory information or evidence favorable to Defendant that is contained in the A-File. The documents in the A-File are not exculpatory. Most of the documents are highly incriminating in nature. The documents include numerous documents related to Defendant's immigration history and his criminal history. The documents establish that Defendant is an illegal alien with a felony criminal record who has been legally deported, removed from the United States, admonished of the criminal sanctions under 8 U.S.C. § 1326, and, despite the prior warnings, subsequently reentered the United States without applying for permission. The Government will provide all documents that fall within the scope of Rule 16.

## C. THE COURT SHOULD NOT SUPPRESS DEFENDANT'S STATEMENTS

### 1. Defendant's Request for an Evidentiary Hearing Should Be Summarily Denied For Failure to Comply with Local Criminal Rule 47.1(g)

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to

suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements). Specifically, Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition." Here, Defendant has failed to support heis allegations with a declaration, in clear opposition to Local Rule 47.1(g). The Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

Instead of presenting a disputed factual issue requiring an evidentiary hearing, Defendant merely cites boilerplate law. See United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted). As such, this Court should deny Defendant's Motion. See Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

**2.    Defendant's Statements Were Voluntary**

A waiver under Miranda v. Arizona, 384 U.S. 436 (1966), must be voluntary, knowing, and intelligent. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The United States bears the burden of showing by a preponderance of the evidence that a defendant waived his Miranda rights. Johnson v. Zerbst, 304 U.S. 458, 464 (1938); Terrovona v. Kincheloe, 912 F.2d 1176, 1180 (9th Cir. 1990).

In order to establish a valid waiver, the United States must show two things: (1) the relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate

1  choice rather than intimidation, coercion, or deception; and (2) the waiver was made with a full
2  awareness both of the nature of the right being abandoned and the consequences of the decision to
3  abandon it. If the totality of the circumstances surrounding the interrogation reveal both an
4  uncoerced choice and the requisite level of comprehension, a valid waiver has occurred. Colorado
5  v. Spring, 479 U.S. 564, 573 (1987); United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994);
6  United States v. Bautista-Avila, 6 F.3d 1360, 1364-66 (9th Cir. 1993); Derrick v. Peterson, 924 F.2d
7  813, 820-21 (9th Cir. 1990).

8       Officer Rosario read Defendant his Miranda rights in the Spanish language. Defendant
9  acknowledged his Miranda rights both verbally and in writing. Defendant agreed to speak to Officer
10 Rosario and indicated that he would make a statement by signing a written waiver of his Miranda
11 rights. Defendant appeared to be alert and coherent while he was questioned. Defendant did not
12 appear to be ill or under the influence of drugs or alcohol. The entire interview was recorded and
13 a copy of that recording was provided to the Defendant.

14      The Ninth Circuit has found a waiver to be knowing and intelligent when a defendant has
15 said, in response to questions by the police, that he or she understands his or her rights, and that the
16 defendant is willing to talk. See, e.g., United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993);
17 United States v. Gordon, 974 F.2d 1110, 1116 (9th Cir. 1992). In the present case Defendant
18 expressed his willingness to answer questions and signed a written waiver which is compelling
19 evidence of a valid waiver. See e.g., United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir.
20 1997) ("[A] written waiver of one's Miranda rights is strong evidence that the waiver is valid.").

21      As such, the proper test is whether the totality of circumstances reflect that Defendant's
22 statement was the product of a rational intellect and a free will. See Blackburn v. Alabama, 361 U.S.
23 199, 208 (1960). In this Instance it clearly was.

**D.   THE GOVERNMENT DOES NOT OBJECT TO DEFENDANT'S MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS PROVIDED THE MOTION IS BASED ON NEW INFORMATION**

26      The Government does not object to the granting of leave to allow Defendant file further
27 motions as long as the additional motions are based on newly discovered evidence or discovery
28 provided by the Government subsequent to the instant motion at issue.

## VI

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's Motions, except where unopposed..

Dated: March 10, 2008

                                                                Respectfully Submitted,

                                                               KAREN P. HEWITT  
                                                              United States Attorney

                                                               S/ A. Dale Blankenship  
                                                               A. DALE BLANKENSHIP  
                                                               Assistant United States Attorney  
                                                               Attorneys for Plaintiff  
                                                               United States of America  
                                                               Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LUIS ARNOLDO-AREVALO,<br><br>　　　　　　　　Defendant. | ) Criminal Case No.  08CR0293-LAB<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

　　　I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　　I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**

　　　2.　DISMISS INDICTMENT DUE TO INVALID DEPORT;
　　　3.　COMPEL DISCOVERY;
　　　4.　SUPPRESS STATEMENTS; AND
　　　5.　GRANT LEAVE TO FILE FURTHER MOTIONS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　　**Robert L. Swain, Esq.,** rls11@aol.com

　　　I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

　　　**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

　　　I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2008.

　　　　　　　　　　　　　　　　　　　　　　　　s/ A. Dale Blankenship
　　　　　　　　　　　　　　　　　　　　　　　　A. DALE BLANKENSHIP