1 | KAREN P. HEWITT
United States Attorney
2 | A. DALE BLANKENSHIP
Assistant U.S. Attorney
3 | California State Bar No. 235960
Federal Office Building
4 | 880 Front Street, Room 6293
San Diego, California 92101-8893
5 | Telephone: (619) 557-6199
Email Dale.Blankenship@usdoj.gov
6 |
Attorneys for Plaintiff
7 | United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR0293-LAB |
|---|---|---|
| Plaintiff, | ) ) | HEARING DATE: May 5, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) ) | UNITED STATES' MOTIONS IN LIMINE TO: |
| | ) | (A) EXCLUDE ALL WITNESSES EXCEPT CASE AGENT; |
| LUIS ARNOLDO-AREVALO | ) | (B) EXCLUDE EVIDENCE WHY DEFENDANT RE-ENTERED UNITED STATES; |
| Defendant. | ) | (C) EXCLUDE EVIDENCE REGARDING PRIOR RESIDENCY; |
| | ) | (D) ADMIT A-FILE DOCUMENTS; |
| | ) | (E) PROHIBIT REFERENCE TO PUNISHMENT. ETC.; |
| | ) | (F) PRECLUDE ARGUMENT REGARDING WARNING; |
| | ) | (G) PROHIBIT ARGUMENT REGARDING DURESS AND NECESSITY; |
| | ) | (H) PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION; |
| | ) | (I) ADMIT 404(b) AND 609 EVIDENCE; |
| | ) | (J) PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION; |
| | ) | (K) PROHIBIT SELF-SERVING HEARSAY; |
| | ) | (L) RENEWED MOTION FOR RECIPROCAL DISCOVERY. |
| | ) | TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, A. Dale Blankenship, Assistant U.S. Attorney, and hereby files its Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. On February 7, 2008, Defendant was arraigned on the indictment and entered a plea of not guilty.

On February 25, 2008, Defendant filed the following motions: dismiss the indictment due to an alleged invalid deportation; compel discovery; suppress statements; and leave to file further motions. On March 10, 2008, the Government filed motions for reciprocal discovery and fingerprint exemplars.

On March 17, 2008, the Court heard argument on the motions. The Court denied Defendant's motion to dismiss the indictment and motion to suppress statements. The Court granted Government's motions for reciprocal discovery and denied as moot the motions for fingerprint exemplars based upon Defendant's agreement to enter into a stipulation regarding his fingerprints.

**II**

**STATEMENT OF FACTS**

On January 9, 2008, at approximately 8:50 a.m., Defendant made application for admission to enter the United States from Mexico, at the San Ysidro, California, Port of Entry, via the pedestrian lanes. Defendant approached Customs and Border Protection ("CBP") Officer Emmanuel Arambulo and presented a border crossing card (B1/B2 Visa/BCC) bearing the name "Augustin Gonzales Torres." Officer Arambulo immediately determined that the document was a counterfeit. Officer Arambulo then asked Defendant if he had any other identification cards. Defendant handed Officer Arambulo a counterfeit Mexican driver license and a counterfeit Mexican voter card. Officer Arambulo asked Defendant where he was going an Defendant stated that he was going to San Ysidro to go shopping.

1  Officer Arambulo then escorted Defendant to pedestrian secondary.

2  At approximately 9:15 a.m., CBP Officer Pham Johnson obtained Defendant's fingerprints and
3  entered them into the IAFIS and IDENT databases. The records checks revealed that Defendant had
4  a significant criminal history. Officer Johnson notified members of the prosecutions unit, and they took
5  custody of Defendant.

6  CBP prosecutions officers conducted queries of Immigration Service records including the
7  Central Index System, and the Deportable Alien Control System. These records checks revealed that
8  Defendant was a citizen of Mexico with no legal documents to enter the United States. This system
9  check also revealed that Defendant had been administratively removed from the United States to Mexico
10 on February 21, 2006. These records checks also confirmed that Defendant has never applied for
11 permission to legally enter the United States.

### B.     POST-MIRANDA STATEMENT

13 At approximately 1:25 p.m., CBP Officer Jorge Rosario conducted a videotaped interview with
14 Defendant. The interview was witnessed by CBP Officer Carla Saco. Officer Rosario read Defendant
15 his Miranda rights in the Spanish language. Defendant acknowledged his Miranda rights both verbally
16 and in writing. Defendant agreed to speak to Officer Rosario and indicated that he would make a
17 statement by signing a written waiver of his Miranda rights. Defendant appeared to be alert and
18 coherent while he was questioned. Moreover, Defendant did not appear to be ill or under the influence
19 of drugs or alchol.

20 Defendant stated that he has been in the United States since he was 5 years old. Defendant stated
21 that he lived with his aunt in Los Angeles for the last 20 years, and that he has worked in the
22 construction business since age 9. Defendant stated that he understands that he has no documents to
23 enter or live in the United States. Defendant also admitted that he has a 2000 felony conviction for rape
24 and that he served 5 years and 2 months in prison. Defendant stated that while he was in prison, and
25 immigration officer spoke with him. Defendant stated that he was removed from the United States in
26 2006 by United States Immigration and Customs Enforcement Officers and that he was turned over to
27 Mexican Immigration Officers.

28 Defendant stated that he spoke with his parole officer about how he could return to the United

States, but that he never applied for documents to enter the United States. Defendant stated that approximately 8 months ago, he asked a friend, "Raul", for documents to enter the United States. "Raul" provided him the counterfeit documents and Defendant was to pay "Raul" $200.00 at a later date. Defendant stated that he intended to enter the United States to go shopping in Chula Vista.

Defendant admitted that he has no documents that would allow him to enter the United States and he also stated that he knows that he needs legal documents to enter the United States. Defendant also admitted that he was removed from the United States in 2006 and that he was not allowed to enter the United States after that.

### C.    DEFENDANT'S CRIMINAL HISTORY

On January 26, 2001, Defendant was convicted of forcible rape in violation of Cal. Penal Code § 261(A)(2). Defendant was sentenced to 6 years' prison.

### D.    DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen of Mexico and he has never had permission to enter or reside in the United States even though he entered illegally as a child in 1989.

While Defendant was serving his sentence in Centinela State Prison, for his forcible rape conviction, Immigration Enforcement Agent Fernando Valenzuela explained to Defendant that the administrative record established that he was deportable and that he was ineligible for any type of relief from deportation. Defendant expressly waived his right to rebut and contest the allegations, and he also waived his right to file a petition for review of the final removal order. On February 21, 2006, when Defendant was released from prison after serving his sentence for forcible rape, he was physically removed from the United States, through the Calexico, California, West Port of Entry.

## III

## MOTIONS IN LIMINE

### A.    THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States

requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**B.    THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his attempted reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his attempt to enter the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of <u>why</u> Defendant violated Section 1326 is patently irrelevant to the question of <u>whether</u> he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. Here, the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant to whether he violated Section 1326. Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is irrelevant.

The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980), is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. <u>Id.</u> at 491. On appeal, she argued that the district court erred in granting the government's motions <u>in limine</u> to preclude her from introducing her "political, religious, or moral beliefs" at trial. <u>Id.</u> at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. <u>Id.</u> at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," and the Ninth Circuit affirmed. <u>Id.</u> at 492. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.
//

### C. THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY

If Defendant seeks to introduce evidence at trial of his former residence in the United States, legal or illegal, the Court should preclude him from doing so. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In <u>United States v. Ibarra</u>, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the United States' motion <u>in limine</u> to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. <u>Id.</u>, <u>overruled on limited and unrelated grounds by</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996). He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. <u>Id.</u>

Similarly, in <u>United States v. Serna-Vargas</u>, 917 F. Supp. 711 (C.D. Cal. 1996), the Defendant filed a motion <u>in limine</u> to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. <u>Id.</u> at 711. Specifically, she sought to introduce evidence of:

(1) involuntariness of initial residence;

(2) continuous residency since childhood;

(3) fluency in the English language; and

(4) legal residence of immediate family members.

<u>Id.</u> at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." <u>Id.</u> at 712. The court also noted that admission of the evidence would run "contrary to the intent of Congress." <u>Id.</u> In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. <u>Id.</u> at 712-13. The factors which the Defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the factors the Attorney General considers in deciding whether to exercise this discretion." <u>Id.</u> at 713.

1 Thus, the court reasoned, "the factors that [the Defendant] now seeks to present to the jury are
2 ones that she could have presented the first time she was deported." Id. Therefore, the court held,
3 "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular,
4 "under the scheme envisioned by Congress, *an alien facing deportation may present evidence of positive*
5 *equities only to administrative and Article III judges, and not to juries*." Id. (emphasis added).

### D. THE COURT SHOULD ADMIT A-FILE DOCUMENTS

The Government intends to offer documents from the Alien Registration File, or "A-file," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security. Specifically, the United States will offer the February 10, 2006, Notice of Intent to Issue Administrative Order; the February 13, 2006, Final Administrative Order; the Warning to Alien Ordered Removed or Deported; the February 21, 2006, Warrant of Deportation; and a Certificate of Non-Existence of Record, or CNR.[1] These documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6) and should be admitted.

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his "A-file." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The Defendant in Loyola-Dominguez argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a Defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United

---

[1] The Certificate of Non-Existence of Records has been ordered by the United States' case agent; at this time the CNR has not been received. The United States will produce the CNR to Defendant as soon as it is received.

1  States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such
2  documents are self-authenticating and, therefore, do not require an independent foundation. Id.

3        The Ninth Circuit has consistently held that documents from a Defendant's immigration file are
4  admissible in a § 1326 prosecution to establish the Defendant's alienage and prior deportation. See
5  United States v. Bahena-Cardenas, 411 F.3d 1067 (9thCir. 2005) (warrant of deport is nontestimonial
6  because it is not made in anticipation of litigation and is a routine, objective cataloging of unambiguous
7  factual matter.); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court
8  properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir.
9  1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing
10 transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant
11 of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974)
12 (district court properly admitted "certain records and memoranda of the Immigration and Naturalization
13 Service" as business records, noting that records would also be admissible as public records).

14     **1.**    **The Court Should Admit the CNR**

15     At trial, the United States anticipates introducing a Certificate of Nonexistence of Record, or
16 CNR, stating that there is no record of Defendant's having received consent to reenter the United States.
17 As the Ninth Circuit recently held, the CNR is nontestimonial evidence and may be admitted. United
18 States v. Cervantes-Flores, 421 F.3d 825, 834 (9th Cir. 2005).

19     **2.**    **The Court Should Admit the Warrant of Deportation**

20     At trial, the United States will offer Defendant's February 21, 2006, Warrant of Deportation, or
21 I-205, to show that Defendant was physically removed from the United States. Similar to the CNR, a
22 warrant of deportation contains a "routine, objective, indeed mechanical recording of an unambiguous
23 factual matter" and is admissible, nontestimonial evidence. United States v. Bahena-Cardenas, 411 F.3d
24 1067, 1075 (9th Cir. 2005) (citation omitted).

25     Defendant's Warrant of Deportation will be relevant at trial for several reasons. First, the United
26 States bears the burden of proving beyond a reasonable doubt that Defendant was physically removed
27 from the United States after the order of deportation and before his entry on April 29, 2007. See id. at
28 1074 (citing United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001)); see also United

States v. McClelland, 941 F.2d 999, 1003 (9th Cir. 1991) ("Clearly, the requirement that the Government prove beyond a reasonable doubt every element of the charged offense is of the most fundamental nature.").

In addition to proving a prior deportation, the Warrant also provides circumstantial evidence of two other elements – alienage and lack of permission to be in the United States. See United States v. Hernandez-Herrera, 273 F.3d 1213 (9th Cir. 2001) ("We have held that deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"). The Warrant shows that Defendant was still subject to deportation, when he was apprehended on January 9, 2008.

### E. THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and improper.

Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003 Edition).[2]

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in an illegal entry trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

### F. THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING PERMISSION TO REENTER BASED UPON WARNING TO ALIEN DEPORTED

The Court should preclude any argument that Defendant believed he was not required to obtain the permission from the Attorney General or his designated successor the Secretary of the Department of Homeland Security prior to reentry into the United States or that Defendant believed he had permission to enter the United States based on any confusion or alleged error in the execution of the I-294 Warning to an Alien Deported. See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10

---

[2] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

(9th Cir. 2000) (holding that such a claim is legally insufficient and any such argument improper).

### G. THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING DURESS AND NECESSITY

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A Defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternative to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195. See also United States v. Perdoma-Espana, 2008 WL 1700519, *5 (9th Cir. April 14, 2008) (a defendant's subjective belief is not adequate to establish necessity defense, defendant's belief must be reasonable as judged by an objective point of view).

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**H.   THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING**

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records. Specifically, the United States seeks to preclude reference to argument that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to the Defendant. Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by the Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming District Court Judge Lorenz's rulings to deny such testimony in a § 1326 "found in" case with similar facts).

The Ninth Circuit Court of Appeals held in Rodriguez-Rodriguez that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. at 1146. The Ninth Circuit explicitly rejected Defense counsel's claim that the District Court's exclusion of the anticipated testimony violates the Confrontation Clause. Instead, it declared that "none of the that information is relevant on the facts of this case, because it is uncontested that Rodriguez never made any application to the INS or any other federal agency." Thus, absent at a minimum a proffer that Defendant had in fact applied for or obtained permission to enter or remain in the United States in this instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and properly excludable.

1  Additionally, the United States seeks to preclude reference to shredding of immigration
2  documents by a (former) INS contractor as set forth in <u>United States v. Randall, et al.</u>, Criminal Case
3  No. SA CR 03-26-AHS (C.D. Cal. 2003) <u>unless</u> the Defendant testifies or offers evidence that (1) he
4  did in fact apply for permission to reenter the United States from the Attorney General, or his designated
5  successor, the Secretary of the Department of Homeland Security <u>and</u> (2) that such a document would
6  have been stored at that particular facility where the shredding occurred in the <u>Randall</u> case.   Any
7  reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence
8  offered by the Defendant at trial that he did in fact seek permission to reenter the United States.  <u>See</u>
9  Fed. R. Evid. 401-403.  Moreover, even if the Defendant offers evidence that he did apply, there must
10 be some showing that his application would have been stored at the facility which is the subject of the
11 <u>Randall</u> case during the time of the alleged shredding of the documents.   Otherwise, it is immaterial
12 and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service
13 Center in Laguna Niguel, California because the Defendant did not apply, or if he did apply, his
14 application was not stored there, and therefore, could not have been effected.   Such  testimony as well
15 as any such statements asserted in Defendant's opening or closing arguments would be unfairly
16 prejudicial to the United States and likely to cause confusion to the jury because such unsupported
17 blanket allegations or references of document destruction or poor record keeping without any showing
18 by the Defendant that he applied for permission to reenter would be misleading.  Accordingly, the
19 United States seeks an order precluding such argument.

20 **I.     <u>THE COURT SHOULD ADMIT 404(B) AND 609 EVIDENCE</u>**

21 Defendant was provided a copy of his rap sheet and many of his conviction records. The United
22 States intends to introduce his serious criminal and immigration history as 404(b) and 609 evidence.
23 As evidence of other acts, the United States intends to introduce the counterfeit border crossing
24 card, the counterfeit Mexican driver license, and the counterfeit Mexican voter card as well as testimony
25 regarding Defendant's presentation of these documents to the CBP Officer at the pedestrian entry.
26 Although the United State's position is that this evidence is inextricably intertwined, it is also evidence
27 of Defendant's intent to enter the United States. Defendant subsequently made post-<u>Miranda</u> statements
28 about how he obtained these documents, when he obtained these documents, and his purpose for

obtaining these documents. These statements by Defendant are also relevant to prove his intent, absence of mistake or accident, preparation, plan and knowledge.

These crimes, wrongs, or acts are relevant to Defendant's current case. Rule 404(b) of the Federal Rules of Evidence precludes the admission of evidence of "other crimes . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of other crimes, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998). The court should consider the following: (1) the evidence of other crimes must tend to prove a material issue in the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time. Id. In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test - its probative value must not be substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

In United States v. Graham, 575 F.2d 739, 740 (9th Cir. 1978), the defendant was being prosecuted for § 1326 and had previously been convicted of "being illegally in the United States." The district court admitted a probation officer's testimony that the defendant was the same person that had previously been convicted of "being illegally in the United States." Id. The defendant appealed arguing that the probation officer's testimony was not admissible. Id. Holding that "[t]his appeal approaches the frivolous," the Ninth Circuit affirmed. Id.

Similarly, in United States v. Bejar-Matrecios, 618 F.2d 81, 83-84 (9th Cir. 1980), the district court admitted the defendant's prior § 1325 conviction in his § 1326 prosecution. The Ninth Circuit held that a prior § 1325 conviction is relevant to a § 1326 prosecution. Id. However, the certified copy of the judgment and commitment order was too prejudicial because it was not introduced with a limiting instruction. Id.

Here, the United States will be requesting a limiting instruction. Defendant's actions in presenting the counterfeit documents prove that he intended to enter the United States without

permission, absence of mistake or accident and knowledge. Defendant presented the counterfeit documents during his attempted entry into the United States. Moreover, with a limiting instruction, the probative value is not substantially outweighed by any prejudicial effect.

In a letter dated April 20, 2008, the United States notified Defendant of its intent to use his prior conviction for impeachment purposes under Rule 609. Specifically, the United States intends to inquire about Defendant's February 27, 2001, conviction for forcible rape in violation of Cal. Penal Code § 261(A)(2), for which he was sentenced to 6 years' incarceration should he testify. The United States will also use Defendant's conviction should Defendant contend that he had permission to enter the United States or that he did not need permission to enter. If Defendant testifies at trial, he will place his credibility squarely at issue, and the United States should be able to inquire in particular about his recent drug conviction.

Federal Rule of Evidence 609(a) provides in pertinent part

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a). The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of the Defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, Defendant's felony conviction can be used as 609 evidence. Several of the Browne factors weigh in favor of admitting the Defendant's felony conviction to attack his credibility. First, the impeachment value of Defendant's felony conviction, which show his disregard for the law, is high. Defendant's conviction would cast doubt on Defendant's credibility should he testify. Second, Defendant's conviction was very recent in time, he was released from prison only 2 years' ago. Third, because such a challenge could only be developed through Defendant's own testimony, his credibility

in asserting such a challenge would be central to the case. Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing his conviction and with a limiting jury instruction.

Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony conviction under Rule 609(a) if he elects to testify at trial.

**J.   THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**

Defendant should not be permitted to argue the lawfulness of his deportation to the jury at trial. See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc). The lawfulness of the deportation is not an element of the offense under Section 1326, so this issue should not be presented to or determined by a jury. Id. at 493.

Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit held that a Defendant who previously waived his right to appeal cannot collaterally attack his deportation:

> A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack.

(citations omitted).

In this case, Defendant validly waived his right to appeal his deportation order in 2006 and, therefore, should be precluded from collaterally attacking his deportation. It would be inappropriate to raise this issue before a jury, which is not tasked with determining the validity of the deportation.

**K.   THE COURT SHOULD EXCLUDE SELF-SERVING HEARSAY**

Defendant's out of court statements are inadmissible hearsay when offered by defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

The United States anticipates that Defendant may try to elicit potentially exculpatory statements from witnesses for the government or the defense. Thus, the United States moves, *in limine*, to prohibit

defense counsel from eliciting self-serving hearsay from either government witnesses or defense witnesses.

**L.     RENEWED MOTION FOR RECIPROCAL DISCOVERY**

The United States renews its motion for reciprocal discovery. As of today, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements.

## IV

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court grant its motions in limine.

DATED:  April 20, 2008.

        Respectfully Submitted,

        KAREN P. HEWITT
        United States Attorney


        S/ A. Dale Blankenship
        A. DALE BLANKENSHIP
        Assistant United States Attorney
        Attorneys for Plaintiff
        United States of America
        Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>LUIS ARNOLDO-AREVALO,<br><br>        Defendant. | )  Criminal Case No. 08CR0293-LAB<br>)<br>)<br>)  **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

    I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE:**

(A)    EXCLUDE ALL WITNESSES EXCEPT CASE AGENT;
(B)    EXCLUDE EVIDENCE WHY DEFENDANT RE-ENTERED UNITED STATES;
(C)    EXCLUDE EVIDENCE REGARDING PRIOR RESIDENCY;
(D)    ADMIT A-FILE DOCUMENTS;
(E)    PROHIBIT REFERENCE TO PUNISHMENT. ETC.;
(F)    PRECLUDE ARGUMENT REGARDING WARNING;
(G)    PROHIBIT ARGUMENT REGARDING DURESS AND NECESSITY;
(H)    PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION;
(I)    ADMIT 404(B) AND 609 EVIDENCE;
(J)    PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION;
(K)    PROHIBIT SELF-SERVING HEARSAY;
(L)    RENEWED MOTION FOR RECIPROCAL DISCOVERY. .

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **Robert L. Swain, Esq., rls11@aol.com**

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
    **None**
the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on April 20, 2008.

                                              s/ A. Dale Blankenship
                                              A. DALE BLANKENSHIP