**ROBERT L. SWAIN**
Attorney at Law
California Bar No. 144163
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1494
Facsimile: (619) 544-1473
e-mail: rls11@aol.com

Attorney for Defendant **Arnoldo-Arevalo**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. LARRY A. BURNS)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. **08-CR-0293-LAB** |
| Plaintiff, ) | Date: May 5, 2008 |
| ) | Time: 2:00 p.m. |
| v. ) | |
| ) | **STATEMENT OF FACTS AND** |
| **LUIS ARNOLDO-AREVALO**, ) | **MEMORANDUM OF POINTS AND** |
| ) | **AUTHORITIES IN SUPPORT OF** |
| Defendant. ) | **DEFENDANT'S MOTIONS** |
| ) | **IN LIMINE** |

**I.**

**STATEMENT OF FACTS**

According to information provided by the government, on February 13, 2006, a deportation officer in El Centro, California ordered Mr. Arnoldo-Arevalo removed from the United States. This order was apparently executed on February 21, 2006, with Mr. Arnoldo-Arevalo being removed from the United States. The proceedings were initiated by a notice of intent to remove which is dated both February 7, and February 10, 2006. The basis for Mr. Arnoldo-Arevalo's expedited removal was an alleged conviction for an aggravated felony after admission into the United States.

Mr. Arnold-Arevalo was then arrested on January 9, 2008, as he was entering the country at the San Ysidro port of entry. Mr. Arnoldo-Arevalo was said to have presented a counterfeit document as he was entering the country through the pedestrian lane at about

9 o'clock in the morning. He was sent to secondary, where he was identified and arrested. Mr. Arnoldo-Arevalo has been named in a single count indictment with attempted entry after deportation in violation of 8 U.S.C. 1326.

     Mr. Arnoldo-Arevalo is 36 years old and a long time resident of the United States. He was brought here as a child at the age of five and grew up in his aunt's house in Los Angeles. Unfortunately, he was never enrolled in school and began working in construction as a young child. He later started a family, and has three United States citizen daughters, ages, 13, 11, and 7. He is alleged to have a single criminal conviction in 2001, and a removal in 2006. The removal was not a normal deportation after a deportation hearing, but rather an informal expedited removal performed by an immigration officer.

## II.

## MOTION TO DISMISS THE INDICTMENT

**A.**     **Motion to Dismiss The Indictment Because it Fails to Allege All Elements of the Charged Offense**

     The indictment must be dismissed because the government has failed to properly allege all elements of the offense. The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "<u>fully, directly, and expressly, without any uncertainty or ambiguity</u>, set forth all the elements necessary to constitute the offense intended to be punished." <u>United States v. Carll</u>, 105 U.S. 611, 612-13 (1881) (emphasis added). It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed. See, e.g., <u>Russell v. United States</u>, 369 U.S. 749, 769-72 (1962); <u>Stirone v. United States</u>, 361 U.S. 212, 218-19 (1960); <u>United States v. Du Bo</u>, 186 F.3d 1177, 1179 (9th Cir. 1999); <u>United States v. Keith</u>, 605 F.2d 462, 464 (9th Cir. 1979).

     In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and (b). In <u>United States v. Salazar-Lopez</u>, __ F.3d __, 2007 WL

3085906 at *2 (9th Cir. Oct. 24, 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that the defendant has been previously removed subsequent to a conviction (*i.e.,* for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal. In this case, the indictment only alleges that Mr. Arnoldo-Arevalo "was removed from the United States subsequent to February 27, 2001." The indictment does not allege either that this removal occurred subsequent to a conviction or allege a specific date of the prior removal. Therefore, because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

**B.      Dismiss The Indictment Because it Violates Mr. Arnoldo-Arevalo's Right to Presentment.**

As a corollary to the above argument, the indictment should be dismissed because it violates Mr. Arnoldo-Arevalo's right to presentment. Mr. Arnoldo-Arevalo has a Fifth Amendment right to have a grand jury pass upon those facts necessary to convict him at trial. In the indictment, the government included the language: "It is further alleged that defendant LUIS ARNOLDO AREVALO was removed from the United States subsequent to February 27, 2001."[1] The indictment in this case violates Mr. Arnoldo-Arevalo's right to presentment in two ways. First, the language added by the government does not ensure that the grand jury actually found probable cause that Mr. Arnoldo-Arevalo was deported after February 27, 2001, as opposed to simply being physically removed from the United States. Second, that the grand jury found probable cause to believe that Mr. Arnoldo-Arevalo was removed "subsequent to February 27, 2001" does

---

[1] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006). In Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been removed from the United States following a conviction. This language, however, does not cure the problems with this indictment. Should sentencing become necessary, Mr. Arnoldo-Arevalo will file further briefing on this issue.

1  not address the possibility that the government may at trial rely on a deportation that was
2  never presented to, or considered by, the grand jury.
3       The Fifth Amendment provides that "[n]o person shall be held to answer for a
4  capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand
5  Jury." U.S. Const. Amend. V.  The Sixth Amendment provides that "[i]n all criminal
6  prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause
7  of the accusation . . .." U.S. Const. Amend. VI.  Thus, a defendant has a constitutional
8  right to have the charges against him presented to a grand jury and to be informed of the
9  grand jury's findings via indictment.  See Russell v. United States, 369 U.S. 749, 763
10 (1962) (An indictment must "contain[] the elements of the offense intended to be charged,
11 and sufficiently apprise[] the defendant of what he must be prepared to meet.").
12      To be sufficient, an indictment must allege every element of the charged offense.
13 See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v.
14 Debrow, 346 U.S. 374 (1953)).  Indeed, in order to be sufficient, an indictment must
15 include implied elements not present in the statutory language.  See Du Bo, 186 F.3d at
16 1179.  "If an element is necessary to convict, it is also necessary to indict, because
17 elements of a crime do not change as criminal proceedings progress." United States v.
18 Hill, 279 F.3d 731, 741 (9th Cir. 2002).  An indictment's failure to "recite an essential
19 element of the charged offense is not a minor or technical flaw . . . but a fatal flaw
20 requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.
21      In the indictment, the government here has added the language:    "It is further
22 alleged that defendant LUIS ARNOLDO AREVALO was removed from the United
23 States subsequent to February 27, 2001."  There is no indication from this "allegation"
24 that the grand jury was charged with the legal meaning of the word "removal" applicable
25 in this context, as opposed to being simply removed from the United States in a colloquial
26 sense.  It is clear from Covian-Sandoval that in order to trigger the enhanced statutory
27 maximum contained in section 1326(b), the government must prove that a person was
28

4

removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings). A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States." See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.) As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before the grand jury. As returned, however, there is no assurance from the face of the indictment that the grand jury in this case was charged with the type of removal necessary to increase a person's statutory maximum under section 1326(b).

     As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Arnoldo-Arevalo. Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial. If the government alleged before the grand jury that Mr. Arnoldo-Arevalo was removed (in a colloquial sense), but offers proof at trial that Mr. Arnoldo-Arevalo was removed (in an immigration sense), there will be a constructive amendment of the indictment at trial. See Stirone v. United States, 361 U.S. 212, 217-19 (1960). Either scenario represents a violation of Mr. Arnoldo-Arevalo's right to presentment. Stirone, 361 U.S. at 218-19.

     A second problem with the indictment is that there is no indication which (if any) deportation the government presented to the grand jury. In most cases, the government will have a choice of deportations to present to the grand jury to support an allegation that a person had been deported after a specific date. According to information provided by the government, although not conceded by the defendant, Mr. Arnoldo-Arevalo has been subjected several removal proceedings. This renders it a very real possibility that the

government alleged one deportation to the grand jury to sustain its allegation that Mr.Arnoldo-Arevalo was removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its trial proof. If this were to turn out to be the case, Mr. Arnoldo-Arevalo's right to have the grand jury pass on all facts necessary to convict him would be violated. See Du Bo, 186 F.3d 1179.

### III.

### PRECLUDE EVIDENCE NOT TIMELY PRODUCED DURING DISCOVERY

Mr. Arnoldo-Arevalo has made a number of discovery requests in this case and, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), in his pre-trial motions. Pursuant to Rule 16(d)(2), Mr. Arnoldo-Arevalo requests that the Court prohibit introduction, at trial, of any documents not timely produced in discovery.

Furthermore, pursuant to Federal Rule of Criminal Procedure 12(b)(4), Mr. Arnoldo-Arevalo requests that the Court order the Government to provide him with prompt written notice of its intention to use any discoverable evidence in its case-in-chief.

### IV.

### THE CERTIFICATE OF NONEXISTENCE OF RECORD IS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE U.S. CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT ITS DISCOVERY OBLIGATIONS

The Government may attempt to establish that Mr. Arnoldo-Arevalo did not obtain permission for admission into the United States by offering a Certificate of Nonexistence of Record (hereinafter "CNR"). As of yet, this document has not been produced in discovery. However, if the government seeks to introduce the CNR, it would be inadmissible because it is non-self-authenticating hearsay, a violation of the Confrontation Clause and a document prepared for litigation.

1    The CNR would be a statement of an INS officer in Washington D.C., that she has
2 searched through the files of the government and has not found a request from Mr.
3 Arnoldo-Arevalo for permission to re-enter the country nor has he found any document
4 granting Mr. Arnoldo-Arevalo permission to re-enter the country.  Consequently, this
5 document contains testimonial evidence and is inadmissible hearsay.  FED. R. EVID. 801,
6 802.
7    Since Crawford it is clear that the use of a CNR and a computer printout to replace
8 the live testimony of the government agent conducting the search or executing the warrant
9 violates Mr. Arnoldo-Arevalo's Sixth Amendment Confrontation Clause right, which
10 "guarantees an opportunity for effective cross-examination . . . ."  United States v. Lo,
11 231 F.3d 471 (9th Cir. 2000) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)).
12 "Evidence may be admissible under an exception to the hearsay rule and still violate the
13 Confrontation Clause." United States v. Neff, 615 F.2d 1235, 1241 (9th Cir. 1980).  The
14 admission of a CNR or a computer printout deprives Mr. Arnoldo-Arevalo of the
15 opportunity to cross-examine the declarant on the competency of his or her investigation.
16 This cross-examination is crucial, as the Government will likely rely entirely on this
17 document to establish that particular element of the offense.
18    The Supreme Court's decision in Crawford v. Washington 541 U.S. 36, 124 S.Ct.
19 1354 (2004) squarely held, pursuant to the Sixth Amendment, that pre-trial, testimonial
20 statements may not be admitted against a defendant at trial where the defendant has not
21 had a chance to cross examine the declarant.   This is true even where the statements fall
22 within a "firmly rooted hearsay exception" or bear "particularized guarantees of
23 trustworthiness." Id. 541 U.S. at ___; 124 S.Ct. at 1363.  Crawford explicitly overturns
24 Ohio v. Roberts, 448 U.S. 56 (1980).
25    The Supreme Court reasoned that the Sixth Amendment was drafted in order to
26 protect against the "civil-law mode of criminal procedure" and "its use of ex parte
27 examinations against the accused." Id. 541 U.S. at ___; 124 S.Ct. at 1363.  Such ex parte
28

7

examinations run into Sixth Amendment concerns because they are "testimonial" in nature. The "text of the Confrontation Clause reflects this focus." Id. 541 U.S. at ___; 124 S.Ct. at 1364. It applies to "witnesses against the accused -- in other words, those who bear testimony." Id. (internal quotations omitted). Thus, the Sixth Amendment is concerned with "testimonial" statements. Id. "Various formulations of this core class of 'testimonial' statements exist:

> *ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.. statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.

Id. 541 U.S. at ___; 124 S.Ct. at 1364. (internal citations and quotations omitted).

The Court went on that:

> [w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability . . .' The Roberts test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one. In this respect, it is very different from exceptions to the Confrontation Clause that make no claim to be a surrogate means of assessing reliability.

Id. 541 U.S. at ___; 124 S.Ct. at 1370.

Thus, the Confrontation Clause does not permit testimonial statements to be admitted at trial without the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation. Id. at 2955. In other words, [w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination." Id. at 2956. In this case, if the government is

8

allowed to enter the CNR into evidence, Mr. Arnoldo-Arevalo will not be given an opportunity to cross examine the percipient witness. The CNR is a statement describing the search and the results of the search of official records. Under <u>Crawford</u> the admission of these out-of-court statements without an opportunity to confront the declarants violates the Constitution.

In addition, Mr. Arnoldo-Arevalo notes that a CNR falls within the exception to the "public records" rule under Rule 803 since the document is prepared by law enforcement for the purpose of litigation. The CNR is comparable to a declaration used in the prosecutions for felon in possession of a firearm declaring that the gun has traveled in interstate commerce. Such a document has been held to fall outside the public records exception precisely because it is prepared by the government for prosecution. <u>United States v. Johnson</u>, 722 F.2d 407, 410 (8th Cir. 1983). So too, the CNR is a document prepared by the government for litigation and cannot therefore be admitted under Rule 803.

Finally, the failure to call this witness testify at trial is an attempt by the Government to circumvent its discovery obligations under <u>Brady</u>, <u>Giglio</u> and the Jenks Act. See <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. U.S.</u>, 405 U.S. 150 (1972), 18 U.S.C. § 3500 *et seq*. If the declarants were to appear at trial to testify, Mr. Arnoldo-Arevalo would undoubtedly be entitled to discovery material, including impeachment evidence against them and their own prior statements and certain other documents (in addition to being entitled to exercise the right of cross-examination).[2] If the Court does allow the admission of the CNR, Mr. Arnoldo-Arevalo requests production of any and all discoverable material to which he would be entitled were this witness to testify at trial.

---

[2] Additionally, it is unknown if the witness conducted the search of the records herself or delegated that job to the individual who actually signed the document.

9

## V.

## THIS COURT SHOULD LIMIT THE TESTIMONY OF THE I.N.S. CUSTODIAN OF RECORDS

The Government has suggested it will admit both the A-file documents and the testimony of an INS agent who would testify about the purpose of the A-file, what documents are contained within the A-File and what those documents mean. Mr. Arnoldo-Arevalo objects to an agent advising the jury about the significance of the documents that are contained in the A-File. The jurors are the fact finders in this case--it is up to them to decide what evidence is credible and how much weight it should be given. A jury is surely going to give a great deal of weight to the testimony of an INS agent. However, that agent's testimony about what A-File documents "mean" is completely irrelevant to the factual issues that will be before the jury.

Moreover, <u>Crawford v. Washington</u>, <u>supra</u>, requires that Mr. Arnoldo-Arevalo have an opportunity to cross examine a declarant before any of the declarant's statements can be introduced against him. Since the meaning of documents written and prepared by others-- the affidavits and other testimonial statements contained in the A-file--will be the subject of the custodian's testimony, such testimony violates Mr. Arnoldo-Arevalo's confrontation clause rights and should be prohibited. Moreover, the defense opposes the government's suggestion that cross-examination should be limited to preclude questioning regarding the fallibility of INS record keeping. Any such infringement on the right to cross-examination is unwarranted and should not be allowed.

## VI.

## THIS COURT SHOULD PRECLUDE THE INTRODUCTION OF THE A-FILE DOCUMENTS TO PROVE ALIENAGE

Notwithstanding the Ninth Circuit's holding in <u>United States v. Hernandez-Herrera</u>, 273 F.3d 1213, 1217 (9th Cir. 2001), Mr. Arnoldo-Arevalo objects the use of the A-file documents as evidence of his alienage. Such evidence is hearsay in this context and violates

Mr. Arnoldo-Arevalo's right of confrontation. Additionally, as outlined above, <u>Crawford v. Washington</u> specifically mandates that testimonial pre-trial statements may not be used against a defendant at trial where the defendant has not had a chance to cross examine the declarant. Thus, no such A-file documents should be introduced against Mr. Arnoldo-Arevalo to prove alienage.

**A.   The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation.**

Mr. Arnoldo-Arevalo expects that the Government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his deportation. These two documents are admissible **only** to establish the fact of the deportation. <u>See, e.g.</u>, <u>United States v. Contreras</u>, 63 F.3d 852, 857 (9th Cir. 1995); <u>United States v. Hernandez-Rojas</u>, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation or the order of deportation reflect the "objective, ministerial fact" of alienage, and so, neither are admissible under Fed. R. Evid. 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Arnoldo-Arevalo's alienage. As the Ninth Circuit has explained:

> ***Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.*** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

<u>United States v. Medina,</u> 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Indeed, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing. Because the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing, it is not admissible under Fed. R. Evid. 803(8) or Fed. R. Evid. 401 to establish the fact of alienage. Likewise, because the warrant of deportation reflects only that an immigration

11

1  judge found Mr. Arnoldo-Arevalo to be an alien after an administrative hearing and that
2  Mr. Arnoldo-Arevalo may have been removed from the United States after that
3  deportation, it has no bearing on the fact of alienage, and it is also inadmissible under
4  Fed. R. Evid. 803(8) and Fed. R. Evid. 401 to establish the fact of alienage.
5       In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001),
6  a pre-Crawford case, the Ninth Circuit stated summarily that A-file documents are
7  admissible under Fed. R. Evid. 803(8)(B) as evidence of alienage.  However, the
8  Hernandez-Herrera Court did *not* say that such documents could conclusively prove
9  alienage.  Specifically, the Hernandez-Herrera Court held "these documents, standing
10 alone, can not conclusively establish a defendant's alien status, [however] Herrera is not
11 challenging the sufficiently of the evidence."  Hernandez-Herrera, 273 F.3d at 1218.   In
12 other words, the Hernandez-Herrera Court implied that it was likely the government
13 failed to prove, beyond a reasonable doubt, that the defendant was an alien but
14 defendant/appellant waived that issue.  The Hernandez-Herrera Court only held there was
15 no confrontation clause problem with the admission of the A-file documents.  Thus, the
16 holding of Hernandez-Herrera is placed in question by Crawford.  This Court must
17 therefore examine the admissibility of the documents at issue under Crawford without
18 reliance upon pre-Crawford cases such as Hernandez-Herrera.
19      Moreover, because the Hernandez-Herrera Court failed to set forth any reasoned
20 discussion, because it failed to discuss the decision in Medina, and because it did not
21 specify which documents from the A-file were admitted in Hernandez-Herrera's case, see
22 id., it is thus not binding authority, and this Court must still address this issue.  See, e.g.,
23 Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring
24 "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the
25 circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that
26 prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous
27 facts").  In any event, Hernandez-Herrera never held that these documents were
28

admissible under Fed. R. Evid. 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

Finally, to the extent that this Court finds that these documents are relevant under Fed. R. Evid. 401, these documents should be excluded under Fed. R. Evid. 403.

In sum, because the warrant of deportation and the order of deportation are not admissible to establish the fact of alienage, these documents are admissible only for a limited purpose, and Mr. Arnoldo-Arevalo accordingly requests this Court instruct the jury, pursuant to Fed. R. Evid. 105, that it may only consider these documents to establish the fact of the deportation and for no other purpose. Mr. Arnoldo-Arevalo further requests that this Court redact these documents to exclude any and all reference to his alleged alienage.

**B.    None of the Other A-file Documents are Admissible under Any Rule of Evidence.**

Mr. Arnoldo-Arevalo anticipates that the Government may seek to admit other documents from the A-file, including the order to show cause why a person should not be deported and warnings regarding the possible penalties for reentry. None of these documents from the A-file are admissible to establish any other matter at issue in this trial.

All documents from the A-file -- except the warrant of deportation and the order of deportation, as discussed, supra -- are irrelevant under Fed. R. Evid. 401; more prejudicial than probative, cumulative, and a waste of time under Fed. R. Evid. 403; and inadmissible hearsay under Fed. R. Evid. 803(8).

**1.    The Order to Show Cause Is Inadmissible.**

The order to show cause is inadmissible under Fed. R. Evid. 401, 403, and 803(8). The order to show cause is a document that provides an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage any more than

1  an indictment provides an objective observation that a person committed a crime.  This
2  document is nothing more than an *accusation* that the government must prove in an
3  immigration proceeding.  Thus, this Court should preclude the admission of the order to
4  show cause.
5     The government incorrectly cites United States v. Loyola Dominguez, 125 F.3d
6  1315 (9th Cir. 1997) for the proposition that ***all*** the A-file documents are admissible.
7  Loyola Dominguez only held that the warrants of deportation are considered public
8  records.  Id. 125 F.3d at 1318.  As to the other documents, such as the order to show
9  cause and arrest warrant, the Loyola Dominguez Court merely noted that the defendant
10 did not challenge the admissibility of those documents.  The Ninth Circuit never ruled on
11 the admissibility of the other A-file documents.  It only noted that the defendant/appellant
12 there waived the issue on appeal.
13    In sum, all documents other than the order of deportation and the warrant of
14 deportation are irrelevant to any issue in this case and more prejudicial than probative
15 under a Rule 401/403 balancing test.
16       **2.  The Warnings of Possible Penalties Is Inadmissible.**
17    Likewise, the warnings of possible penalties is inadmissible under Fed. R. Evid.
18 401, 403, and 803(8). The warning contains boilerplate statements (drafted by the INS)
19 regarding the penal consequences to an alien who illegally reenters the country. It has no
20 bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this
21 case more or less probable.  This document contains inadmissible hearsay; it is irrelevant
22 and more prejudicial than probative. It also must be excluded at trial.  Again, for the
23 reasons articulated above, Loyola Dominguez does not hold that this A-file document is
24 admissible.  Nor is it.
25       **3.  If this Court Finds These Documents Are Somehow Relevant,  They Are Not Admissible to Establish Alienage, and Thus, This Court Should**
26       **Provide the Jury With a Limiting Instruction.**
27    To the extent that this Court finds any A-file document relevant to some point, they
28

14

are not admissible to establish Mr. Arnoldo-Arevalo's alienage, and this Court should redact these documents to exclude all references to alienage and, pursuant to Fed. R. Evid. 105, instruct the jury as to the limited value of such documents.

**C.     This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Arnoldo-Arevalo's Constitutional Rights.**

This Court must preclude the admission of the A-file documents to establish the fact of alienage to protect Mr. Arnoldo-Arevalo's rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt, as guaranteed by the Fifth and Sixth Amendments. Specifically, because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of proving alienage based upon otherwise inadmissible hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988). Because a criminal defendant never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

In addition, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of these documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they

15

would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Fed. R. Evid. 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation"). The Government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of this factual finding accordingly undermines a defendant's constitutional right to a reliable jury finding of an essential element.

Hence, because the A-file documents are generated by the Government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety, or, to the extent they are admissible to prove some other fact, redact these documents to exclude reference to Mr. Arnoldo-Arevalo's alienage and instruct the jury as to their limited relevance.

## VII.

### MR. ARNOLDO-AREVALO MUST BE GIVEN THE OPPORTUNITY TO ATTACK THE CREDIBILITY OF THE HEARSAY DECLARANT

Under the Federal Rules of Evidence and the Fifth and Sixth Amendments to the Constitution, Mr. Arnoldo-Arevalo must be given the opportunity to attack the credibility of all hearsay declarants. Federal Rule of Evidence 806, provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted

16

1    calls the declarant as a witness, the party is entitled to examine
2    the declarant on the statement as if under cross-examination.

3   It is anticipated that the Government will attempt to introduce hearsay evidence (*e.g.*,
4   documents, or the lack of documents, from Mr. Arnoldo-Arevalo's A-File) under a theory
5   that the evidence is admissible under FRE 803(6) ("Records of Regularly Conducted
6   Activity") and 803(7) ("Absence of Entry in Records Kept in Accordance With the
7   Provisions of Paragraph (6)").  The declarant in the context of Rules 803(6) and 803(7) is
8   the business or organization itself (*i.e.*, the Department of Homeland Security ["DHS"]
9   (and its predecessor in interest the Immigration and Naturalization Service ["INS"]).  If
10  the Government seeks to introduce hearsay evidence on the basis of Rule 803(6) or
11  803(7), then Mr. Arnoldo-Arevalo must be given the opportunity to attack the credibility
12  of the hearsay declarant (*i.e.*, the DHS or INS).  The types of impeachment include, but
13  are not limited to, reputation and prior inconsistent statements.  See Fed. R. Evid. 608;
14  Fed. R. Evid. 613(b); United States v. Moody, 903 F.2d 321, 328-329 (5th Cir. 1990).
15  The failure to allow Mr. Arnoldo-Arevalo the opportunity to impeach the credibility of
16  the hearsay declarant is reversible error and a violation of his Sixth Amendment right to
17  confrontation and his Fifth Amendment right to due process.  See Moody, 903 F.2d at
18  329; see also United States v. Wali, 860 F.2d 588 (3d Cir. 1988).[3]

---

[3] United States v. Rodriguez-Rodriguez, 393 F.3d 849 (9th Cir. 2005), is not to the contrary.  In Rodriguez-Rodriguez, the Ninth Circuit incorrectly determined that the trial court's refusal to allow cross-examination regarding the record keeping practices of the INS did not violate the defendant's rights under the Confrontation Clause.  Here, the proposed introduction of testimony is premised on the theory of impeachment of the hearsay declarant.  Thus, Rodriguez-Rodriguez is inapplicable.

17

## VIII.

### PRIOR TO THE ADMISSION OF ANY STATEMENTS ALLEGEDLY MADE BY MR. ARNOLDO-AREVALO, THIS COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER THE STATEMENTS COMPLY WITH *MIRANDA* AND WERE VOLUNTARY

Mr. Arnoldo-Arevalo renews his requests to suppress any statements given post-arrest under Miranda. Moreover, the government may attempt to introduce some prior admission made in the past to an immigration official. This should be excluded because they were the result of custodial interrogation with no Miranda advisal given. As well, Mr. Arnoldo-Arevalo renews his request that this Court hold a voluntariness hearing to determine the admissibility of any alleged statements, including any alleged admissions. See 18 U.S.C. § 3501; Opper v. United States, 348 U.S. 84 (1954) (indicating that admissions should receive the same cautious treatment accorded confessions); People v. Chessman, 52 Cal.2d 467, 341 P.2d 679 (1959) (noting that the distinctions between confessions and admissions are "subtle and questionable.")  Therefore, prior to the introduction of any statement allegedly made by Mr. Arnoldo-Arevalo, he requests that this Court determine whether the alleged statements complied with *Miranda* and were voluntary.

## IX.

### THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609

The Court should preclude the Government from introducing any Rule 404(b) or Rule 609 evidence.  The Court should preclude 404(b) evidence because the Government has failed to provide any notice, and the Government has not established that such evidence is relevant.  All Rule 609 evidence should be precluded because it is irrelevant, and any probative value is substantially outweighed by its prejudicial effect.

1 **A.     This Court Should Exclude All 404(b) Evidence.**

This Court should exclude all 404(b) evidence because the Government has failed to comply with its obligation to provide timely notice. Rule 404(b) requires that the Government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Arnoldo-Arevalo requested notice in his motion for discovery filed in February. In its response, the government counsel did not indicated that it intended to offer such evidence but only as of today has provided notice, and therefore, the Government should be precluded from introducing such evidence at trial.

Moreover, the Government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v, Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the Government has not presented an evidential hypothesis, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

**B.     This Court Should Exclude All 609 Evidence.**

Under Rule 609, evidence of prior convictions is usually admissible only under certain circumstances, and in the discretion of the Court. Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to only those offenses for which the Court determines that the probative value outweighs its prejudicial effect to the accused. The Government should be precluded from introducing any evidence of prior convictions because it is irrelevant under Federal Rule of Evidence 401, prejudicial under Federal Rule of Evidence 403, and the government has not

provided any notice of its intent to introduce this evidence.

To the extent that this Court rules that Mr. Arnoldo-Arevalo's alleged prior convictions are admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Arnoldo-Arevalo was convicted. Such information would be more prejudicial than probative of Mr. Arnoldo-Arevalo's guilt of the charged offense.

## X.
## CONCLUSION

For the above stated reasons, the Court should grant the above cited motions.

Respectfully submitted,

/s/ Robert L. Swain

Dated: April 21, 2008

**ROBERT L. SWAIN**
Attorney at Law
Attorney for Defendant **Arnoldo-Arevalo**