KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant U.S. Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199
Email Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR0293-LAB |
|---|---|---|
| Plaintiff, | ) | HEARING DATE:    May 5, 2008 |
| | ) | TIME:                    2:00 p.m. |
| v. | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTIONS IN LIMINE TO: |
| LUIS ARNOLDO-AREVALO | ) | (A)    DISMISS INDICTMENT; |
| | ) | (B)    PRECLUDE EVIDENCE; |
| Defendant. | ) | (C)    PRECLUDE CNER; |
| | ) | (D)    LIMIT TESTIMONY OF A-FILE |
| | ) | CUSTODIAN; |
| | ) | (E)    PRECLUDE A-FILE DOCUMENTS AS |
| | ) | PROOF OF ALIENAGE; |
| | ) | (F)    ALLOW IMPEACHMENT OF |
| | ) | HEARSAY DECLARANT; |
| | ) | (G)    SUPPRESS STATEMENTS; AND |
| | ) | (H)    PRECLUDE 404(B) AND 609 |
| | ) | EVIDENCE. |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF FACTS, |
| | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

Karen P. Hewitt,  United States Attorney, A. Dale Blankenship, Assistant U.S. Attorney, and hereby

files its Response and Opposition to Defendant's Motions In Limine in the above-referenced case.  Said

Response and Opposition is based upon the files and records of this case together with the attached

statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. On February 7, 2008, Defendant was arraigned on the indictment and entered a plea of not guilty.

On February 25, 2008, Defendant filed the following motions: dismiss the indictment due to an alleged invalid deportation; compel discovery; suppress statements; and leave to file further motions. On March 10, 2008, the Government filed motions for reciprocal discovery and fingerprint exemplars.

On March 17, 2008, the Court heard argument on the motions. The Court denied Defendant's motion to dismiss the indictment and motion to suppress statements. The Court granted Government's motions for reciprocal discovery and denied as moot the motions for fingerprint exemplars based upon Defendant's agreement to enter into a stipulation regarding his fingerprints.

On April 24, 2008, a federal grand jury in the Southern District of California returned a two-count Superseding Indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326; and aggravated identity theft in violation of Title 18, United States Code, Section 1028A(a)(1).

The Government will seek to arraign Defendant on the Superseding Indictment on April 28, 2008, during the calendared hearing regarding status of counsel.

# II

## STATEMENT OF FACTS

On January 9, 2008, at approximately 8:50 a.m., Defendant made application for admission to enter the United States from Mexico, at the San Ysidro, California, Port of Entry, via the pedestrian lanes. Defendant approached Customs and Border Protection ("CBP") Officer Emmanuel Arambulo and presented a border crossing card (B1/B2 Visa/BCC) bearing the name "Augustin Gonzales Torres." Officer Arambulo immediately determined that the document was a counterfeit. Officer Arambulo then asked Defendant if he had any other identification cards. Defendant handed Officer Arambulo a counterfeit Mexican driver license and a counterfeit Mexican voter card. Officer Arambulo asked

1  Defendant where he was going an Defendant stated that he was going to San Ysidro to go shopping.

2  Officer Arambulo then escorted Defendant to pedestrian secondary.

3  At approximately 9:15 a.m., CBP Officer Pham Johnson obtained Defendant's fingerprints and

4  entered them into the IAFIS and IDENT databases.  The records checks revealed that Defendant had

5  a serious criminal history.  Officer Johnson notified members of the prosecutions unit, and they took

6  custody of Defendant.

7  CBP prosecutions officers conducted queries of Immigration Service records including the

8  Central Index System, and the Deportable Alien Control System.  These records checks revealed that

9  Defendant was a citizen of Mexico with no legal documents to enter the United States.  This system

10  check also revealed that Defendant had been administratively removed from the United States to Mexico

11  on February 21, 2006.  These records checks also confirmed that Defendant has never applied for

12  permission to legally enter the United States.  Moreover, members of the prosecutions unit determined

13  that the border crossing card was photo altered.

14  On April 21, 2008, Customs and Border Protection Officers queried the United States State

15  Department consolidated consular database and determined that Agustin Gonzalez Torres was in fact

16  an individual who applied for, and was granted, a Border Crossing Card.

17  **B.    POST-MIRANDA STATEMENT**

18  At approximately 1:25 p.m., CBP Officer Jorge Rosario conducted a videotaped interview with

19  Defendant.  The interview was witnessed by CBP Officer Carla Saco.  Officer Rosario read Defendant

20  his Miranda rights in the Spanish language.  Defendant acknowledged his Miranda rights both verbally

21  and in writing.  Defendant agreed to speak to Officer Rosario and indicated that he would make a

22  statement by signing a written waiver of his Miranda rights.  Defendant appeared to be alert and

23  coherent while he was questioned.  Moreover, Defendant did not appear to be ill or under the influence

24  of drugs or alcohol.

25  Defendant stated that he has been in the United States since he was 5 years old.  Defendant stated

26  that he lived with his aunt in Los Angeles for the last 20 years, and that he has worked in the

27  construction business since age 9.  Defendant stated that he understands that he has no documents to

28  enter or live in the United States.  Defendant also admitted that he has a 2000 felony conviction for rape

and that he served 5 years and 2 months in prison.  Defendant stated that while he was in prison immigration officer spoke with him.  Defendant stated that he was removed from the United States in 2006 by United States Immigration and Customs Enforcement Officers and that he was turned over to Mexican Immigration Officers.

Defendant stated that he spoke with his parole officer about how he could return to the United States, but that he never applied for documents to enter the United States. Defendant stated that approximately 8 months ago, he asked a friend, "Raul," for documents to enter the United States. "Raul" provided him the counterfeit documents and Defendant was to pay "Raul" $200.00 at a later date.  Defendant stated that he intended to enter the United States to go shopping in Chula Vista.

Defendant admitted that he has no documents that would allow him to enter the United States and he also stated that he knows that he needs legal documents to enter the United States.  Defendant also admitted that he was removed from the United States in 2006 and that he was not allowed to enter the United States after that.

### C.    DEFENDANT'S CRIMINAL HISTORY

On January 26, 2001, Defendant was convicted of forcible rape in violation of Cal. Penal Code § 261(A)(2).  Defendant was sentenced to 6 years' prison.

### D.    DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen of Mexico and he has never had permission to enter or reside in the United States even though he entered illegally as a child in 1989.

While Defendant was serving his sentence in Centinela State Prison, for his forcible rape conviction, Immigration Enforcement Agent Fernando Valenzuela explained to Defendant that the administrative record established that he was deportable and that he was ineligible for any type of relief from deportation.  Defendant expressly waived his right to rebut and contest the allegations, and he also waived his right to file a petition for review of the final removal order.  On February 21, 2006, when Defendant was released from prison after serving his sentence for forcible rape, he was physically removed from the United States, through the Calexico, California, West Port of Entry.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III

## POINTS AND AUTHORITIES

### A.    INDICTMENT IS SUFFICIENT

Defendant moves to dismiss the indictment because it fails to allege all the elements of 8 U.S.C. § 1326(a) and (b).  Citing United States v. Salazar-Lopez, 506 F. 3d 748 (9th Cir. 2007), Defendant argues that the Indictment must allege that the defendant was removed subsequent to a conviction or it must allege a specific date of a prior removal.  Defendant then argues that because the Indictment does not allege this information it does not allege all of the elements, and therefore it must be dismissed.

Subsequent to the court's decision in Salazar-Lopez, the court decided United States v. Calderon-Segura, 512 F.3d 1104 (9th Cir. 2008).  In Calderon-Segura, the court held that in order for the enhanced statutory maximum under § 1326(b), the indictment must allege either the date of the prior removal, "or that it occurred after a qualifying conviction."  Calderon-Segura, 512 F.3d 1104 at 1111. In this case, the Indictment alleges that the Defendant was removed after February 21, 2001 (the date of Defendant's prior aggravated felony conviction).

Defendant's interpretation of 8 U.S.C. § 1326(b) is foreclosed by Almendarez-Torres v. United States, 523 U.S. 233, 235 ( 1998) which holds that the subsections under 1326(b) are not separate crimes, but sentencing factors that need not be alleged in the indictment.  Defendant's arguments are also foreclosed by Ninth Circuit caselaw applying the holding in Almendarez-Torres.  United States v. Martinez-Martinez, 295 F.3d 1041, 1043 (9th Cir. 2002) (rejecting argument that "§ 1326 is unconstitutional under Apprendi"); United States v. Fresnares-Torres, 235 F.3d 481, 482 (9th Cir. 2000) ("Apprendi therefore preserved the specific holding of Almendarez-Torres . . . that 8 U.S.C. § 1326(b)(2) -- the subsection increasing the penalty for previous deportation following conviction of an aggravated felony -- was a mere penalty provision for recidivist behavior and did not define a separate offense."); United States v. Bonilla-Mungia, 422 F.3d 316, 318-19 (5th Cir. 2005) (rejecting argument that the sentencing enhancement provisions of 8 U.S.C. § 1326(b) are facially unconstitutional because Almendarez-Torres has been undercut by Apprendi).

Almendarez-Torres "stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum

penalty need not be so charged." Pacheco-Zepeda, 234 F.3d at 413-14 (quoting Jones v. United States, 526 U.S. 227, 248 (1999)). See also, United States v. Valle-Montalbo, 474 F.3d 1197, 1201 (9th Cir. 2007); United States v. Tighe, 266 F.3d 1187, 1191 (9th Cir. 2001) ("Under the current state of the law, the Constitution does not require prior convictions that increase a statutory penalty to be charged in the indictment."); United States v. Reyes-Pacheco, 248 F.3d 942, 944 (9th Cir. 2001) ("The district court did not err by considering Reyes-Pacheco's prior aggravated felony conviction despite the fact that such conduct was . . . [not] charged in the indictment.")

Because the subsection (b) factors are penalty provisions, they need not be alleged in the indictment. The indictment was not, therefore, insufficient.

**B.    THE INDICTMENT DOES NOT VIOLATE DEFENDANT'S RIGHT TO PRESENTMENT**

Defendant argues that there is no assurance that the Grand Jury has passed on the necessary facts to convict the Defendant because there is no indication that the Grand Jury was charged with the legal meaning of the word "removal" applicable in the context of a the enhanced penalty provision of § 1326(b). The Defendant further argues that he has been subjected to multiple removal proceedings and that it is possible that the Government will present at trial a different removal proceeding than that presented to the Grand Jury. Defendant is wrong both factually and legally.

Contrary to the Defendant's assertions, he has been removed pursuant to an administrative removal determination on one occasion: February 21, 2006. There were, in fact, no other removals that could have been presented to the Grand Jury.

Moreover, although Defendant correctly states the court in United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) cited the elements of a deportation provided by the district court, he is incorrect about the elements the Government must prove at trial. In Unites States v. Luna-Madellaga, 315 F.3d 1224, 1226 (9th Cir. 2003) the court held that § 1326(b) only requires that the alien reenter the United States after having been removed subsequent to an aggravated felony conviction, and it turns on the alien's physical removal, not the type of removal. This holding was re-affirmed in United States v. Diaz-Luevano, 494 F.3d 1159, 1162 (9th Cir. 2007).

//

1    **C.**    <u>**PRECLUDE EVIDENCE NOT PRODUCED IN DISCOVERY**</u>

2    The Government has complied and will continue to comply with its discovery obligations.

3    **D.**    <u>**CERTIFICATE OF NON-EXISTENCE OF RECORD IS ADMISSIBLE**</u>

4    Defendant seeks to exclude the Certificate of Non-existence of record as evidence of

5    Defendant's lack of permission to reapply for admission to the United States.  Defendant argues that it

6    should be excluded because it violates the rule announced in <u>Crawford</u>.  The Ninth Circuit disagreed

7    with this exact argument holding that "the CNR is nontestimonial evidence under <u>Crawford</u> and thus

8    was properly admitted by the district court."  <u>United States v. Cervantes-Flores</u>, 421 F. 3d 825, 834 (9th

9    Cir. 2005).

10    **E.**    **A-FILE CUSTODIAN TESTIMONY**

11    The United States intends to call a Customs and Border Protection Officer as the custodian of

12    Defendant's A-File.  This testimony about the contents of the file, record-keeping procedures, and the

13    meaning of certain documents will be based on personal, on-the-job experience.  <u>See</u> Fed. R. Evid. 701

14    (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); <u>United</u>

15    <u>States v. VonWillie</u>, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese

16    observations are common enough and require such a limited amount of expertise, if any, that they can,

17    indeed, be deemed lay witness opinion"); <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315, 1317 (9th

18    Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS'

19    Alien Registry File".).  The procedure has been implicitly approved by the Ninth Circuit in numerous

20    § 1326 prosecutions.  <u>See, e.g.</u> <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039, 1042-45 (9th Cir. 2000);

21    <u>Loyola-Dominguez</u>, 125 F.3d at 1318.

22    It is incomprehensible how the Confrontation Clause affects the Records Custodian's ability to

23    testify.  As noted previously, the <u>Crawford</u> decision does not affect the admissibility of A-File records

24    because they are nontestimonial records.  Moreover, the Records Custodian is on the stand and subject

25    to confrontation.  If Defendant believes that some question for the Records Custodian at trial violates

26    the Confrontation Clause, he is free to object at that time.  However, the Court should not make a

27    pretrial ruling limiting the Records Custodian's testimony.

28    **F.**    <u>**A-FILE DOCUMENTS AS EVIDENCE OF ALIENAGE**</u>

1    As more fully discussing in its motions in limine, the United States intends to offer documents

2    from the Department of Homeland Security's "A-File" that corresponds to Defendant's name in order

3    to establish Defendant's alienage, prior deportation, and that he was subsequently found in the United

4    States without having sought or obtained authorization from the Secretary of Homeland Security.  The

5    documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business

6    records."  Fed. R. Evid. 803(6).  They are admissible as evidence of alienage.  See United States v.

7    Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation

8    documents to prove alienage by stating that "deportation documents are admissible to prove alienage

9    under the public records exception to the hearsay rule."); United States v. Loyola-Dominguez, 125 F.3d

10   1315 (9th Cir. 1997); see also United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir.

11   2005) (denying a challenge to a warrant of deportation based upon Crawford v. Washington, 541 U.S.

12   36 (2004) since such A-File documents are nontestimonial).  Accordingly, the Court should deny

13   Defendant's motion to preclude the United States from using A-File documents as evidence of alienage.

14        **G.    CREDIBILITY OF HEARSAY DECLARANT**

15   Defendant argues that he should be given the opportunity to attack the credibility of all hearsay

16   declarants.  To the extent that Defendant seeks to circumvent the holding in United States v. Rodriguez-

17   Rodriguez, 364 F.3d 1142 (9th Cir. 2004), he should be prohibited.  As discussed more fully in the

18   Government's motions in limine, absent a proffer that Defendant has in fact applied for or obtained

19   permission to enter or remain in the United States in this instant case, any such line of inquiry regarding

20   record keeping or spoilation on cross examination or on direct testimony is irrelevant and properly

21   excludable.

22        **H.    DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

23   As discussed more fully in the Government's response and opposition to Defendant's motions

24   to suppress the Defendant's statement, the Defendant's statements were made after he was properly

25   advised of his Miranda rights, and the statements were made voluntarily.  Defendant does not dispute

26   any factual issue with respect to his statement's made to the Customs and Border Protection Officers

27   during his post-arrest interview.  His motion for an evidentiary hearing should be denied.

28   Defendant did make statements to Immigration Enforcement Agent Ferndando Valenzuala when

Agent Valenzuela served Defendant with the I-851 removal documents on February 10, 2006. Agent Valenzuela first reviewed the allegations with Defendant in Spanish, then confirmed that Defendant understood that it was alleged that he was not a citizen of the United States, that he was a citizen of Mexico, that he entered the United States without inspection near San Ysidro in 1989, that he was not a lawful permanent resident, and that he was convicted of rape by force/fear on January 26, 2001.   Defendant confirmed that the allegations were true.  Agent Valenzuela then advised Defendant that he had a right to contest the removal order.  Defendant chose not to contest the removal order but instead admitted the allegations, admitted that he was deportable, and he chose to be removed to Mexico.  Evidence of this statement was fully set forth in Agent Valenzual's declaration, attached as exhibit 1 to the Government's supplemental response to Defendant's motion to dismiss the indictment based upon an invalid deportation.

Defendant states that his statements made during this interview should have been preceded by Miranda warnings because he was questioned in a custodial setting.  While it is true that Defendant was in custody, he was in custody while serving his sentence on his forcible rape conviction.  He was not, however, subject to a custodial "interrogation."    The Ninth Circuit considered and rejected a similar argument in the context of statements made during an immigration hearing in United States v. Solano-Godines, 120 F.3d 957 (9thCir. 1997). In this case, Defendant was not in criminal proceedings at the time he was questioned regarding his administrative removal. Defendant was deported following his release from prison, he was not prosecuted. .

The reasoning in United States v. Salgado, 292 F.3d 1169 (9thCir 2002) is directly on point on this issue.  In Salgado, the court stated that "if Salgado had been interviewed in connection with a "prosecution for violating the immigration laws," or if Salgado had been in custody on charges related to his immigration status, then questions about birthplace and citizenship might have reasonably likely to elicit an incriminating response."  Id. at 1172.  The Court pointed out that "[b]y the same token, Solano-Godines and Salgado both differ from Mata-Abundiz in that unlike Mata-Abundiz, the person asking the questions did not know from pending state charges that a federal criminal prosecution relevant to nationality could result; they did not refer the alien for criminal prosecution or initiate one themselves; and the defendant's were not prosecuted forthwith on federal immigration charges." Id. at

1174. Likewise, Defendant was not in custody on criminal charges relating to an immigration offense and he was not criminally charged with illegal re-entry until several years after his deportation proceeding. Agent Valenzuela could not have foreseen that Defendant would illegally re-enter the United States in the future. Defendant's statements are, therefore, admissible.

### I.    404(b) AND 609 EVIDENCE IS ADMISSIBLE

Defendant moves to preclude 404(b) and 609 evidence. As the United States indicated in its motions in limine, the evidence should be admitted. Defendant was provided a copy of his rap sheet and conviction records. The United States intends to introduce his criminal history as 609 evidence.

It is anticipated that Defendant may dispute at least one of the elements. If Defendant chooses to testify at trial, the United States should not be prevented from demonstrating Defendant's lack of trustworthiness by utilizing his prior convictions for impeachment purposes. See United States v. Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004) (affirming impeachment with sanitized prior drug conviction in a § 1326 prosecution).

The Government has superseded the indictment to allege aggravated identity theft. Because the evidence that the Government intended to introduce under 404(b) related to Defendant's use of another individual's identification documents, this motion is moot. The evidence is admissible to prove the elements of the offense of aggravated identity theft.

### IV

### CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny Defendant's motions in limine.

DATED:  April 24, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


S/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

9

08CR0293-LAB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08CR0293-LAB

1

## UNITED STATES DISTRICT COURT

2

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 3 | UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR0293-LAB |
| 4 | Plaintiff, | ) |
| 5 | v. | ) **CERTIFICATE OF SERVICE** |
| 6 | LUIS ARNOLDO-AREVALO, | ) |
| 7 | Defendant. | ) |

8

IT IS HEREBY CERTIFIED THAT:

9

10    I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

11    I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE:**

12

13    (A)    DISMISS INDICTMENT;
(B)    PRECLUDE EVIDENCE;
(C)    PRECLUDE CNER;
14    (D)    LIMIT TESTIMONY OF A-FILE CUSTODIAN;
(E)    PRECLUDE A-FILE DOCUMENTS AS PROOF OF ALIENAGE;
15    (F)    ALLOW IMPEACHMENT OF HEARSAY DECLARANT;
(G)    SUPPRESS STATEMENTS; AND
16    (H)    PRECLUDE 404(B) AND 609 EVIDENCE.

17

18    on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

19    **Robert L. Swain, Esq., rls11@aol.com**

20    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
21    **None**
22    the last known address, at which place there is delivery service of mail from the United States Postal Service.
23    I declare under penalty of perjury that the foregoing is true and correct. Executed on April 24, 2008.

24                                                s/ A. Dale Blankenship
                                                A. DALE BLANKENSHIP
25

26

27

28