KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant U.S. Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199
Email Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0293-LAB |
| --- | --- | --- |
| Plaintiff, | ) ) | HEARING DATE: June 2, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) ) | Trial: June 3, 2008 |
| | ) | 9:00 a.m. |
| LUIS ARNOLDO-AREVALO, | ) ) | UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS TO: |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) | (A) DISMISS COUNT 1 FOR SPEEDY TRIAL ACT VIOLATION; (B) DISMISS COUNT 2 FOR SPEEDY TRIAL ACT VIOLATION; AND (C) DISMISS COUNT 2 AS DEFECTIVE. TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, A. Dale Blankenship, Assistant U.S. Attorney, and hereby files its Response and Opposition to Defendant's Motions in the above-referenced case. Said Response and Opposition is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. On February 7, 2008, Defendant was arraigned on the indictment and entered a plea of not guilty.

On February 25, 2008, Defendant filed the following motions: dismiss the indictment due to an alleged invalid deportation; compel discovery; suppress statements; and leave to file further motions. On March 10, 2008, the Government filed motions for reciprocal discovery and fingerprint exemplars.

On March 17, 2008, the Court heard argument on the motions. The Court denied Defendant's motion to dismiss the indictment and motion to suppress statements. The Court granted Government's motions for reciprocal discovery and denied as moot the motions for fingerprint exemplars based upon Defendant's agreement to enter into a stipulation regarding his fingerprints.

On April 21, 2008, Defendant filed motions in limine to dismiss the indictment; preclude evidence; preclude admission of the CNER; limit testimony of the A-File custodian; preclude A-File documents; allow impeachment of hearsay declarant; suppress statements; and preclude 404(b) and 609 evidence. On April 24, 2008, the Government filed a response to Defendant's motions in limine.

On April 24, 2008, a federal grand jury in the Southern District of California returned a two-count Superseding Indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326; and aggravated identity theft in violation of Title 18, United States Code, Section 1028A(a)(1).

On April 28, 2008, Defendant was arraigned on the Superseding Indictment and the previously scheduled trial date was vacated and reset for June 3, 2008.

**II**

**STATEMENT OF FACTS**

On January 9, 2008, at approximately 8:50 a.m., Defendant made application for admission to enter the United States from Mexico, at the San Ysidro, California, Port of Entry, via the pedestrian lanes. Defendant approached Customs and Border Protection ("CBP") Officer Emmanuel Arambulo and presented a border crossing card (B1/B2 Visa/BCC) bearing the name "Augustin Gonzales Torres."

1 Officer Arambulo immediately determined that the document was a counterfeit. Officer Arambulo then
2 asked Defendant if he had any other identification cards. Defendant handed Officer Arambulo a
3 counterfeit Mexican driver license and a counterfeit Mexican voter card. Officer Arambulo asked
4 Defendant where he was going an Defendant stated that he was going to San Ysidro to go shopping.
5 Officer Arambulo then escorted Defendant to pedestrian secondary.

6      At approximately 9:15 a.m., CBP Officer Pham Johnson obtained Defendant's fingerprints and
7 entered them into the IAFIS and IDENT databases. The records checks revealed that Defendant had
8 a serious criminal history. Officer Johnson notified members of the prosecutions unit, and they took
9 custody of Defendant.

10      CBP prosecutions officers conducted queries of Immigration Service records including the
11 Central Index System, and the Deportable Alien Control System. These records checks revealed that
12 Defendant was a citizen of Mexico with no legal documents to enter the United States. This system
13 check also revealed that Defendant had been administratively removed from the United States to Mexico
14 on February 21, 2006. These records checks also confirmed that Defendant has never applied for
15 permission to legally enter the United States. Moreover, members of the prosecutions unit determined
16 that the border crossing card was photo altered.

17      On April 21, 2008, Customs and Border Protection Officers queried the United States State
18 Department consolidated consular database and determined that Agustin Gonzalez Torres was in fact
19 an individual who applied for, and was granted, a Border Crossing Card.

20      **B.**    **POST-MIRANDA STATEMENT**

21      At approximately 1:25 p.m., CBP Officer Jorge Rosario conducted a videotaped interview with
22 Defendant. The interview was witnessed by CBP Officer Carla Saco. Officer Rosario read Defendant
23 his Miranda rights in the Spanish language. Defendant acknowledged his Miranda rights both verbally
24 and in writing. Defendant agreed to speak to Officer Rosario and indicated that he would make a
25 statement by signing a written waiver of his Miranda rights. Defendant appeared to be alert and
26 coherent while he was questioned. Moreover, Defendant did not appear to be ill or under the influence
27 of drugs or alcohol.

28      Defendant stated that he has been in the United States since he was 5 years old. Defendant stated

that he lived with his aunt in Los Angeles for the last 20 years, and that he has worked in the construction business since age 9. Defendant stated that he understands that he has no documents to enter or live in the United States. Defendant also admitted that he has a 2000 felony conviction for rape and that he served 5 years and 2 months in prison. Defendant stated that while he was in prison an immigration officer spoke with him. Defendant stated that he was removed from the United States in 2006 by United States Immigration and Customs Enforcement Officers and that he was turned over to Mexican Immigration Officers.

Defendant stated that he spoke with his parole officer about how he could return to the United States, but that he never applied for documents to enter the United States. Defendant stated that approximately 8 months ago, he asked a friend, "Raul," for documents to enter the United States. "Raul" provided him the counterfeit documents and Defendant was to pay "Raul" $200.00 at a later date. Defendant stated that he intended to enter the United States to go shopping in Chula Vista.

Defendant admitted that he has no documents that would allow him to enter the United States and he also stated that he knows that he needs legal documents to enter the United States. Defendant also admitted that he was removed from the United States in 2006 and that he was not allowed to enter the United States after that.

### C.  DEFENDANT'S CRIMINAL HISTORY

On January 26, 2001, Defendant was convicted of forcible rape in violation of Cal. Penal Code § 261(A)(2). Defendant was sentenced to 6 years' prison.

### D.  DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen of Mexico and he has never had permission to enter or reside in the United States even though he entered illegally as a child in 1989.

While Defendant was serving his sentence in Centinela State Prison, for his forcible rape conviction, Immigration Enforcement Agent Fernando Valenzuela explained to Defendant that the administrative record established that he was deportable and that he was ineligible for any type of relief from deportation. Defendant expressly waived his right to rebut and contest the allegations, and he also waived his right to file a petition for review of the final removal order. On February 21, 2006, when Defendant was released from prison after serving his sentence for forcible rape, he was physically

removed from the United States, through the Calexico, California, West Port of Entry.

### III

### POINTS AND AUTHORITIES

**A.    Motion To Dismiss Superseding Indictment**

    **1.    Procedural History**

On January 10, 2008, the Government filed a complaint charging defendants with attempted entry after deportation in violation of 8 U.S.C. § 1326.

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. On February 7, 2008, Defendant was arraigned on the indictment and entered a plea of not guilty.

On April 24, 2008, a federal grand jury in the Southern District of California returned a two-count Superseding Indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326; and aggravated identity theft in violation of Title 18, United States Code, Section 1028A(a)(1).

On April 28, 2008, Defendant was arraigned on the Superseding Indictment and the previously scheduled trial date was vacated and reset for June 3, 2008.

    **2.    The Superseding Indictment Complies with the Speedy Trial Act.**

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Here, the complaint filed on January 10, 2008, and the initial indictment returned on February 7, 2008, charged defendant with attempted reentry after deportation in violation of 8 U.S.C. § 1326. The Government plainly complied with § 3161(b).

Defendant contends the superseding indictment returned on April 24, 2008, impermissibly added a new charge of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. He is wrong. "A charge contained in a superseding indictment which was not included in the original complaint does not violate

the Speedy Trial Act." United States v. Gastelum-Almeida, 298 F.3d 1167, 1173 (9th Cir. 2002). See also United States v. Orbino, 981 F.2d 1035, 1037 (9th Cir. 1992) ("A superseding indictment issued before the original indictment is dismissed may issue more than thirty days after the arrest. Not all charges must be filed within the first thirty day period."). Attempted reentry and aggravated identity theft are distinct offenses.[1]

Defendant's reliance on language in United States v. Palomba. 31 F.3d 1456 (9th Cir. 1994), is misplaced. But even if the Court accepted this characterization, it still wouldn't support Defendant's Speedy Trial Act claim because the Palomba decision turns on a factual distinction not found here.

In Palomba, the Court of Appeals found defense counsel ineffective for failing to move to dismiss counts charged in the complaint, omitted from the original indictment, and then charged in the superseding indictment approximately three months later. Id. at 1462-1465. There, the defendant was charged by complaint with making false statements to a federal agency, mail fraud, and conspiracy, in violation of 18 U.S.C. §§ 1001, 1341, and 371. Id. at 1459. Ten days later, a grand jury returned an indictment charging one count of conspiracy to defraud the United States and one count of making false statements to a federal agency in violation of 18 U.S.C. §§ 371 and 1001, The original indictment did not include the mail fraud allegations that appeared in the complaint. Id. A few months later, a superseding indictment was returned that included the two counts of mail fraud in violation of § 1341. Id. at 1460. Thus, the superseding indictment in Palomba charged the mail fraud violations under § 1341 that were included in the complaint, but omitted in the first indictment. This omission in the first indictment was critical to the Court's analysis: "In short, the superseding indictment charged Palomba in an untimely manner with an offense which was contained in the complaint but which was not preserved against Section 3162(a)(1) dismissal either by such facial factual differences or by inclusion in the timely original indictment." Id. at 1464.

---

[1] Defendant contends that the superseding indictment is not based on new facts or discovery. But it is irrelevant for purposes of the Speedy Trial Act whether the new offenses charged in the superseding indictment are based on the same or different conduct underlying the offenses charged in the complaint. See, e.g., United States v. Pollock, 726 F.2d 1456, 1462-63 (9th Cir. 1984) (courts applying the Speedy Trial Act look to the "face of the complaint" and do not "engage in the complex task of investigating the relationship between the conduct underlying the offenses charged in the complaint and the conduct underlying the offenses charged in the indictment").

### 3. No Violation of the 70 Day Speedy Trial Clock has Occurred

Under the Speedy Trial Act ("STA"), a defendant must be brought to trial within 70 days after the indictment or arraignment (whichever comes later). Henderson v. United States, 476 U.S. 321, 323 n.2 (1986). The STA mandates dismissal of the indictment, with or without prejudice, upon defendant's motion if the 70-day limitations period is exceeded. United States v. Vo, 413 F.3d 1010, 1013-14 (9th Cir. 2005); 18 U.S.C. 3162(a)(2). However, "certain types of delay do not count against the seventy-day time limit." See United States v. Sutter, 340 F.3d 1022, 1027 (9th Cir. 2003); 18 U.S.C. §§ 3161(h). A review of the procedural history of Defendant's case reveals that 16 days remain on the speedy trial clock for the purpose of the June 3, 2008, trial date.

The speedy trial clock began to run after Defendant was arraigned on the Indictment on February 7, 2008. The clock was tolled on February 25, 2008, when Defendant filed a number of pre-trial motions. United States v. Van Brandy, 726 F.2d 548, 551 (9th Cir. 1984) (the pendency of a pre-trial motion triggers and automatic exclusion); 18 U.S.C. § 3161(h)(1)(F). Thus, a total of **20 of the 70 days** ran between February 7, 2008, and February 25, 2008.

On March 17, 2008, the Court held a motion hearing in which it ruled on all of the motions Defendant filed on February 25, 2008 and the Government motions. Since the Court ruled on all pending motions, the speedy trial clock began running again on February 26, 2008.

On March 17, 2008, the Court set a motions in limine hearing date of May 5, 2008, and a trial date of May 5, 2008. On April 20, 2008, the Government filed a number of motions in limine. On April 21, 2008, Defendant filed a number of motions in limine, including motions to dismiss the indictment and suppress statements. The Government responded to Defendant's motions on April 24, 2008. The Government's motions in limine tolled the speedy trial clock on April 20, 2008. See Van Brandy, 726 F.2d at 551. Thirty-four speedy trial days ran between February 26, 2008, and April 20, 2008, thus bringing the total number of days to **54 out of 70**.

On April 24, 2008, the Government filed the Superseding Indictment. On April 28, 2008, at the request of Defendant, a status of counsel hearing was held, and the Court denied Defendant's second request for new counsel. On that same date, Defendant was arraigned on the Superseding Indictment. Defendant then made an oral motion to sever the counts which the Court denied. Defendant invoked

1  his right to a 30 day delay between the time of the Superseding Indictment and trial under 18 U.S.C. §
2  3161. The Court granted Defendant's request and set a new motions in limine hearing date for June 2,
3  2008, and a new trial date for June 3, 2008.
4  The speedy trial clock has remained tolled as of April 20, 2008, from the date of the filing of the
5  Government's in limine motions. See 18 U.S.C. § 3161(h)(1)(F). There exists, therefore, 16 days
6  remaining on the speedy trial clock.

**B.     Count 2 of the Superseding Indictment Was Sufficient**

8  Defendant moves to dismiss the indictment because it fails to allege all the elements of 18 U.S.C.
9  § 1028A. Citing no authority, Defendant argues that the Indictment must allege that the defendant knew
10 the visa belonged to a real person; the visa was stolen from that person; and that the defendant knew that
11 the visa belonged to a real person. Defendant then argues that because the Indictment does not allege
12 this information it does not allege all of the elements, and therefore it must be dismissed.
13 Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a "plain, concise, and
14 definite written statement of the essential facts constituting the offense charged." Rule 7(c)(3) states
15 that an error in the indictment is not a ground for dismissal if it "did not mislead the defendant to the
16 defendant's prejudice." Rule 7(c) was intended to introduce "a simple form of indictment." Advisory
17 Committee Notes to Subdivision (c), Fed. R. Crim. P. 7 (2002). The Ninth Circuit has held that an
18 indictment is generally appropriate if it sets forth the offense in the words of the statute itself. United
19 States v. Musacchio, 968 F.2d 782, 787 (9th Cir. 1991) (indictment that tracks the statute itself is
20 generally sufficient); United States v. Johnson, 804 F.2d 1078, 1084 (9th Cir. 1986). In fact, an
21 indictment which tracks a statute's language is presumptively valid as drafted. Musacchio, 968 F.2d at
22 787.
23 In Musacchio, this Court reasoned that in judging the sufficiency of the indictment, a court must
24 determine whether the indictment adequately alleges the elements of the crime and whether the
25 defendant was fairly informed of the charges against him, so the defendant can defend himself against
26 the charge and be protected against a subsequent prosecution for the same act. Id.; United States v.
27 Jenkins, 785 F.2d 1387, 1392 (9th Cir. 1986), United States v. Buckley, 689 F.2d 893, 897 (9th Cir.
28 1982). The Government was required to state only the essential facts necessary to inform Musacchio

of the crime charged. Musacchio, 968 F.2d at 787; United States v. Markee, 425 F.2d 1043, 1047-48 (9th Cir. 1970).

In this case, the Indictment charging Defendant with aggravated identity theft properly tracked the statutory language of 18 U.S.C. §1028A and sufficiently informs him of charges. The Indictment states:

> On or about January 9, 2008, within the Southern District of California, defendant LUIS ARNOLDO-AREVALO, during and in relation to a violation of Title 8, United States Code, Sections 1326(a) and (b), knowingly possessed and used, without lawful authority, a means of identification of another person, to wit: United States B1/B2 Visa and Border Crossing Card in the name of Agustin Gonzalez Torres; in violation of Title 18, United States Code, Section 1028A.

The Indictment clearly places Defendant on notice of the crime charged against him and allows him to adequately defend himself against the charge.

Consistent with the thrust of Rule 7, there generally are no "magic" words required in indictments, and defendants are not entitled to have a charge reflect the wording of their choice so long as, at minimum, they are given notice of the elements. "[T]he test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Hinton, 222 F.3d 664, 672 (9th Cir. 2000); see also Davis v. United States, 347 F.2d 378, 379 (10th Cir. 1965) (there is no "magic" way of alleging mens rea); Hagner, 285 U.S. at 431 (courts should not ask "whether it [the indictment] could have been made more definite and certain, but whether it contains the elements of the offense"). An indictment that sets forth the charged offense in the words of the statute itself is generally sufficient. United States v. Johnson, 804 F.2d 1078, 1084 (9th Cir. 1986).

Defendant also asserts that the plain language of the statute indicates that in order to prove a violation of § 1028A, the Government must prove that the defendant knows that the means of identification belong to a real person when he uses the means of identification. Defendant is correct that the Ninth Circuit has not ruled on this issue. There exists, however, a split of authority on this issue and the issue of the extent of the defendant's knowledge should be addressed in the Court's jury instruction. In United States v. Godin, 476 F.Supp. 2d 1, 1 (D.Me. 2007), the district court entertained a motion to dismiss an indictment alleging a violation of § 1028A. The district court denied the motion stating that the there is a jury question regarding what the defendant knows and finding it more appropriate for the

defendant to pursue her argument by motion for judgement of acquittal and/or appropriate jury instruction. Id. at 2. Such is an appropriate resolution in this case.

Moreover, several circuit courts have determined, contrary to the Defendant's assertion, that the Government need not prove that the defendant knew that the means of identification belonged to a real person when he used the means of identification. In United States v. Montejo, 442 F.3d 213, 217 (4th Cir. 2006), the court held that the defendant need not be aware of the actual assignment of an alien identity number to one individual and a social security number to another individual to have violated § 1028A. Likewise, in United States v. Mendoza-Gonzalez, 2008 WL 819161, p.4 (8th Cir. March 28, 2008), the court held that the defendant need not know that the means of identification he transferred, possessed, or used, belonged to another actual person. The Eleventh Circuit reached the same conclusion in United States v. Hurtado, 508 F.3d 603, 610 (11th Cir. 2007). However, at least one circuit court and two district courts have reached the opposite conclusion and determined that the Government must prove that the defendant knew the means of identification the defendant transferred, possessed or used actually belonged to another person. See United States v. Villanueva-Sotelo, 515 F. 3d 1234, 1234 (D.C. Cir. 2008); United States v. Hairup, 2008 WL 471710, p.2 (D. Utah Feb. 19, 2008); United States v. Beachem, 399 F.Supp. 2d 1156, 1157 (W.D. Wash. 2005).

**C.     The Indictment Does Not Violate Defendant's Right to Presentment**

Defendant argues that there is no assurance that the Grand Jury has passed on the necessary facts to convict the Defendant because there is no indication that the Grand Jury found probable cause that he knew that the means of identification he possessed and used was that of an actual person. Based upon the reasoning set forth in the decisions of the Fourth, Eighth, and Eleventh Circuits noted above, it is the Government's position that the defendant need not know that the means of identification he possessed and used belonged to an actual person. As such, there was no presentment violation.

//
//
//
//
//

**IV**

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court deny Defendant's motions.

DATED: May 20, 2008.

                              Respectfully Submitted,

                              KAREN P. HEWITT
                              United States Attorney

                              S/ A. Dale Blankenship
                              A. DALE BLANKENSHIP
                              Assistant United States Attorney
                              Attorneys for Plaintiff
                              United States of America
                              Email: Dale.Blankenship@usdoj.gov

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>LUIS ARNOLDO-AREVALO,<br><br>                    Defendant. | )  Criminal Case No.  08CR0293-LAB<br>)<br>)<br>)  **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**

(A)   DISMISS COUNT 1 FOR SPEEDY TRIAL ACT VIOLATION;
(B)   DISMISS COUNT 2 FOR SPEEDY TRIAL ACT VIOLATION; AND
(C)   DISMISS COUNT 2 AS DEFECTIVE.

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Robert L. Swain, Esq., rls11@aol.com**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
**None**
the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 20, 2008.

                                        s/ A. Dale Blankenship
                                        A. DALE BLANKENSHIP