KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619)235-2757(Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR0293-LAB |
|---|---|
| Plaintiff, | ) DATE: June 3, 2008 |
|  | ) TIME: 9:00 a.m. |
| v. | ) |
| LUIS ARNOLDO-AREVALO, | ) GOVERNMENT'S TRIAL MEMORANDUM |
| Defendant. | ) |

The UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, A. Dale Blankenship, Assistant United States Attorney, hereby files the Government's Trial Memorandum.

//
//
//
//
//
//
//
//
//
//

08CR0293-LAB

# I

# STATEMENT OF THE CASE

### A. Indictment

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count indictment charging defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. On February 7, 2008, Defendant was arraigned on the indictment and entered a plea of not guilty.

On April 24, 2008, a federal grand jury returned a Superseding Indictment charging Defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326 and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1).

On April 28, 2008, Defendant was arraigned on the Superseding Indictment and the previously scheduled trial date was vacated and reset for June 3, 2008.

### B. Trial Status

Trial is scheduled for Tuesday, June 3, 2008, at 9:00 a.m., before the Honorable Larry A. Burns, United States District Judge. The Government anticipates that its case-in-chief will last one day.

### C. Status of Counsel

Defendant is represented by appointed counsel, Robert L. Swain, Esq.

### D. Custody Status

Defendant is in custody.

### E. Interpreter

The Government does not need an interpreter for its witnesses. The Government anticipates that Defendant may require a Spanish language interpreter.

### F. Jury Waiver

Defendant has not filed a jury waiver.

### G. Pretrial Motions

On February 25, 2008, Defendant filed the following motions: dismiss the indictment due to an alleged invalid deportation; compel discovery; suppress statements; and leave to file further motions.

On March 10, 2008, the Government filed its response to Defendant's motions and filed motions for reciprocal discovery and fingerprint exemplars.

On March 17, 2008, the Court heard argument on the motions. The Court denied Defendant's motion to dismiss the indictment and motion to suppress statements. The Court granted Government's motions for reciprocal discovery and denied as moot the motions for fingerprint exemplars based upon Defendant's agreement to enter into a stipulation regarding his fingerprints.

### H. Motions in Limine

On April 21, 2008, the Government filed motions in limine to admit A-file documents, allow FRE 609 and 404(b) evidence, preclude reference to INS recordkeeping and spoliation, preclude evidence or argument regarding duress and necessity, preclude reference to residency or immigration status, preclude reference to the reasons why defendant re-entered the United States, preclude reference to potential punishment, preclude argument regarding the lawfulness of the deportation, and exclude witnesses from the courtroom.

On April 21, 2008, Defendant filed motions in limine to dismiss the indictment; preclude evidence; preclude admission of the CNER; limit testimony of the A-File custodian; preclude A-File documents; allow impeachment of hearsay declarant; suppress statements; and preclude 404(b) and 609 evidence. On April 24, 2008, the Government filed a response to Defendant's motions in limine.

### I. Stipulations

The Defendant has agreed to enter a stipulation regarding his fingerprints.

### J. Discovery

The Government has complied with its discovery obligations and has produced 82 pages of discovery, as well as a copy of the audiotape of Defendant's deportation hearing and a DVD copy of Defendant's Miranda advisal and post-Miranda statement. As of this date, Defendant has provided no reciprocal discovery.

//
//
//

**II**

**STATEMENT OF THE FACTS**

**A.    INSTANT OFFENSE**

On January 9, 2008, at approximately 8:50 a.m., Defendant made application for admission to enter the United States from Mexico, at the San Ysidro, California, Port of Entry, via the pedestrian lanes. Defendant approached Customs and Border Protection ("CBP") Officer Emmanuel Arambulo and presented a border crossing card (B1/B2 Visa/BCC) bearing the name "Augustin Gonzales Torres." Officer Arambulo immediately determined that the document was a photo altered. Officer Arambulo then asked Defendant if he had any other identification cards. Defendant handed Officer Arambulo a counterfeit Mexican driver license and a counterfeit Mexican voter card. Officer Arambulo asked Defendant where he was going an Defendant stated that he was going to San Ysidro to go shopping. Officer Arambulo then escorted Defendant to pedestrian secondary.

At approximately 9:15 a.m., CBP Officer Pham Johnson obtained Defendant's fingerprints and entered them into the IAFIS and IDENT databases. The records checks revealed that Defendant had a serious criminal history. Officer Johnson notified members of the prosecutions unit, and they took custody of Defendant.

CBP prosecutions officers conducted queries of Immigration Service records including the Central Index System, and the Deportable Alien Control System. These records checks revealed that Defendant was a citizen of Mexico with no legal documents to enter the United States. This system check also revealed that Defendant had been administratively removed from the United States to Mexico on February 21, 2006. These records checks also confirmed that Defendant has never applied for permission to legally enter the United States.

**B.    POST-MIRANDA STATEMENT**

At approximately 1:25 p.m., CBP Officer Jorge Rosario conducted a videotaped interview with Defendant. The interview was witnessed by CBP Officer Carla Saco. Officer Rosario read Defendant his Miranda rights in the Spanish language. Defendant acknowledged his Miranda rights both verbally and in writing. Defendant agreed to speak to Officer Rosario and indicated that he would make a statement by signing a written waiver of his Miranda rights. Defendant appeared to be alert and

coherent while he was questioned. Moreover, Defendant did not appear to be ill or under the influence of drugs or alcohol.

Defendant stated that he has been in the United States since he was 5 years old. Defendant stated that he lived with his aunt in Los Angeles for the last 20 years, and that he has worked in the construction business since age 9. Defendant stated that he understands that he has no documents to enter or live in the United States. Defendant also admitted that he has a 2000 felony conviction for rape and that he served 5 years and 2 months in prison. Defendant stated that while he was in prison, an immigration officer spoke with him. Defendant stated that he was removed from the United States in 2006 by United States Immigration and Customs Enforcement Officers and that he was turned over to Mexican Immigration Officers.

Defendant stated that he spoke with his parole officer about how he could return to the United States, but that he never applied for documents to enter the United States. Defendant stated that approximately 8 months ago, he asked a friend, "Raul," for documents to enter the United States. "Raul" provided him the counterfeit documents and Defendant was to pay "Raul" $200.00 at a later date. Defendant stated that he intended to enter the United States to go shopping in Chula Vista.

Defendant admitted that he has no documents that would allow him to enter the United States and he also stated that he knows that he needs legal documents to enter the United States. Defendant also admitted that he was removed from the United States in 2006 and that he was not allowed to enter the United States after that.

**C.    DEFENDANT'S CRIMINAL HISTORY**

On January 26, 2001, Defendant was convicted of forcible rape in violation of Cal. Penal Code § 261(A)(2). Defendant was sentenced to 6 years' prison.

**D.    DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a citizen of Mexico and he has never had permission to enter or reside in the United States even though he entered illegally as a child in 1989.

While Defendant was serving his sentence in Centinela State Prison for his forcible rape conviction, Immigration Enforcement Agent Fernando Valenzuela explained to Defendant that the administrative record established that he was deportable and that he was ineligible for any type of relief

from deportation. Defendant expressly waived his right to rebut and contest the allegations, and he also waived his right to file a petition for review of the final removal order. On February 21, 2006, when Defendant was released from prison after serving his sentence for forcible rape, he was physically removed from the United States, through the Calexico, California, West Port of Entry.

## III

## PERTINENT LAW

### A.    ELEMENTS OF 8 U.S.C. §1326

The Government must prove each of the following elements beyond a reasonable doubt:

1. Defendant was deported from the United States;
2. Defendant had the conscious desire to reenter the United States without consent;
3. Defendant committed an overt act that was a substantial step towards reentering the United States without consent;
4. Defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and
5. Defendant was an alien at the time of the defendant's attempted reentry into the United States.

See 9th Cir. Model Crim. Jury Instructions 9.5A (2007); United States v. Gracidas-Ulibarry, 231 F.3d 1188 (9th Cir. 2000).[1]

### 1.    Alienage

The Ninth Circuit has held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9thCir. 2001)(affirming the admission of deportation documents to prove alienage). The Ninth Circuit also has described the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997)(citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9thCir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332

---

[1]   The Government will request a special verdict form indicating that the Defendant was removed subsequent to February 27, 2001. See United States v. Jose Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).

    (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior deportation order, admissions Ramirez-Cortez made in his underlying deportation proceeding, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien, Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997)(finding sufficient evidence of alienage where the government's evidence consisted of a prior deportation order, the admissions made during the deportation hearing that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior deportation order, the deportation hearing transcript, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.32d 1149, 1158 (9th Cir. 2000) (emphasis added).

    The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see Id., and transcripts, see Contreras, 63 F.3d at 858.

    **2.    Physical Removal**

    The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-1276 (9thCir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224 (9thCir 2003) ("Section 1326 speaks only of 'removal' . . . It plainly turns on the alien's physical removal–not the order of removal."). This holding was affirmed in United States v. Diaz-Luevano, 494 F.3d 1159 (9thCir. 2007) ("Luna-Madellaga held that what matters for criminal reentry purposes is the date of "the alien's physical removal – not the order of removal." Id. Morales-Izquierdo does not deal with whether reinstatement of a removal order includes physical removal, which it does. Luna-Madellaga is still good law.") Id. at 1162. As a result, the United States need only prove beyond a reasonable doubt that Defendant physically left the country some time between the time he was ordered deported and the time he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9thCir. 2005)(citation omitted). A warrant of deportation may be sufficient evidence of physical removal. Id.

//
//
//

**B.     AGGRAVATED IDENTITY THEFT [8 U.S.C. 1028A]**

The United States must prove beyond a reasonable doubt that:

1. Defendant knowingly possessed and used a means of identification of another person without lawful authority; and

2. Defendant knowingly possessed and used the identification during and in relation to the commission of an immigration offense.

Although the Ninth Circuit has not addressed the issue of what elements the Government must prove, several circuit courts have determined that the Government need not prove that the defendant knew that the means of identification belonged to a real person when he used the means of identification. See United States v. Montejo, 442 F.3d 213, 215 (4th Cir. 2006), cert. denied, 127 S. Ct. 366 (2007) (finding § 1028A(a)(1) unambiguous and holding that "as a matter of common usage, 'knowingly' does not modify the entire lengthy predicate that follows it."); United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007) (per curiam) (same); United States v. Godin, 489 F. Supp. 2d 118 (D. Me. 2007) (same). Likewise, in United States v. Mendoza-Gonzalez, 2008 WL 819161, p.4 (8th Cir. March 28, 2008), the court held that the defendant need not know that the means of identification he transferred, possessed, or used, belonged to another actual person.

However, at least one circuit court and three district courts have reached the opposite conclusion and determined that the Government must prove that the defendant knew the means of identification the defendant transferred, possessed or used actually belonged to another person. See United States v. Villanueva-Sotelo, 515 F. 3d 1234, 1234 (D.C. Cir. 2008); United States v. Hairup, 2008 WL 471710, p.2 (D. Utah Feb. 19, 2008); United States v. Beachem, 399 F.Supp. 2d 1156, 1157 (W.D. Wash. 2005); United States v. Salazar-Montero, 520 F. Supp. 2d 1079, 1094 (N.D. Iowa 2007) (same).

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.

See 9th Cir. Crim. Jury Instr. 3.18 (2007).

Use of a means of identification of another is to present, display, certify or otherwise employ the identification in any manner so that it would be accepted as identification. Cf. United States v. Klopf, 423 F.3d 1228, 1240 (11th Cir. 2005) (interpreting 18 U.S.C. § 1029(a)).

The term "lawful authority" means the authority to use or possess identification documents by statute or regulation, or by contract with a government entity which has such authority. Cf. United States v. Bell, 980 F.2d 1095, 1098 (7th Cir. 1992) (interpreting 18 U.S.C. § 1028(a)).

## IV

## WITNESSES

The United States reserves the right to add, omit, substitute or change the order of witnesses. Presently, the United States intends to call the following witnesses during its case-in-chief:

1. CBP Officer Emmanuel Arambulo;
2. CBP Officer Jorge Rosario;
3. CBP Officer Carla Saco;
4. CBP Officer Pham Johnson;
5. Immigration Enforcement Agent Fernando Valenzuela;
6. CBP Officer Sara Esparagoza;
7. Department of State Special Agent Ricardo Gibert.

## V

## EXHIBIT LIST

The United States will provide an exhibit list on the morning of trial. Presently, the United States intends to offer into evidence copies of the following documents:

1. Notice of Intent to Issue Administrative Order (Form I-851) dated February 10, 2006
2. Final Administrative Removal Order dated February 13, 2006
3. Warning to Alien Ordered Removed or Deported (Form I-294)
4. Warrant of Removal/Deportation (Form I-205) dated February 21, 2006
5. Certificate of Non-existence of Record
6. Photo Altered Border Crossing Card (B1/B2 Visa/BCC)
7. Counterfeit Mexican Driver License
8. Counterfeit Mexican Voter Card
9. NIV Applicant Detail for Agustin Gonzalez Torres
10. Visa Application for Agustin Gonzalez Torres

1  Copies of all exhibits have been produced in discovery. The Government will make its exhibits
2  available to Defendant for examination in advance of trial. The Government also requests an
3  opportunity to examine Defendant's exhibits before trial.

## VI

## OTHER LEGAL ISSUES

### A.   The Court Should Admit A-File Documents and Testimony

The documents in Defendant's A-file are properly admissible under the public records exception to the hearsay rule. See Fed. R. Evid. 803(8)(B); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001) ("deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (finding that although immigration records are made by law enforcement agents, they reflect only "ministerial, objective observations" and do not implicate the concerns of the law enforcement exception). The documents in Defendant's A-file would also be admissible under the business records exception to the hearsay rule. See Fed. R. Evid. 803(6); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted records and memoranda of the Immigration and Naturalization Service as business records).

The public records exception is "a firmly rooted exception to the hearsay rule" and the admission of these records into evidence would not violate the Confrontation Clause. Hernandez-Herrera, 273 F.3d at 1217-18 (citing United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995)); see also Crawford v. Washington, 124 S. Ct. 1354, 1367 (2004) (admission of business records would not violate the Confrontation Clause because business records are not "testimonial" in nature). Furthermore, the public records exception is one of the few hearsay exceptions that does not require a foundation. Id. Documents that fall under the public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence.'" Montiel v. City of Los Angeles, 2 F.3d 335, 341 (9th Cir. 1993) (quoting Keith v. Volpe, 858 F.2d 467, 481 (9th Cir. 1988)). These documents will be certified are self-authenticating under Fed. R. Evid. 902(4).

//
//

### B. The Court Should Admit the Certificate of Non-existence of Record

At trial, the Government will introduce a Certificate of Non-existence of Record ("CNR") to establish that Defendant did not have express permission from the Attorney General or the Secretary of the Department of Homeland Security before he reentered the United States.

The CNR does not constitute testimonial hearsay evidence prohibited by Crawford v. Washington, 541 U.S. 36 (2004). Rather, it is properly admitted as a self-authenticating, non-testimonial public record. Fed. R. Evid. 803(10), 902(1); United States v. Cervantes-Flores, 421 F.3d 825, 831-34 (9th Cir. 2005) ("the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court"); United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (stating that the documents in a defendant's immigration file are analogous to nontestimonial business records and that "the CNR . . ., reflecting the absence of a record . . ., [does] not fall into the specific categories of testimonial statements referred to in Crawford").

### C. Duplicates

A duplicate is admissible to the same extent as an original document unless: (1) a genuine question is raised as to the authenticity of the original; or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

## VII

## PROPOSED VOIR DIRE

1. Is there anyone who has strong feelings about Customs and Border Protection?
2. Does anyone have strong feelings about the Immigration and Naturalization Service – an agency now known as the Department of Homeland Security?
3. Has anyone had a negative experience at the United States-Mexico border?
4. Has anyone traveled through the San Ysidro, California, Port of Entry? Has anyone had any negative experiences with Customs and Border Protection Officers at the port?
5. Does anyone believe that the United States should have an "open border"?
6. Does anyone believe that the United States Government should not patrol the border it shares with Mexico?
7. Does everyone understand that the Court will instruct you not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?

8. This case involves a Defendant who is charged with attempted entry after being deported. An alien who is deported from the United States may have sympathetic reasons why he is coming back into the United States. These reasons are irrelevant under the law. Is there anyone who feels that he or she cannot ignore any sympathetic reasons why an alien may reenter the United States in deciding whether the Defendant is guilty or not guilty?

9. Is there anyone who cannot commit to applying the law to the facts, regardless of whether you disagree with the law?

11. In every criminal case throughout the United States, the law requires the Government to prove its case against a defendant beyond a *reasonable* doubt. However, as the Court will instruct you, the law does not require the Government to prove its case beyond all possible doubt. Is there anyone who cannot follow the Court's instructions in this regard and would require the Government to prove this case beyond all possible doubt?

12. The United States must prove its case beyond a reasonable doubt. As the Court will instruct you, a reasonable doubt is based upon reason and common sense, and is not based purely on speculation. Is there anyone who cannot commit to evaluate this case based on your reason and common sense and not base your decision purely on speculation?

## VIII

## JURY INSTRUCTIONS

The United States will submit proposed jury instructions under separate cover.

Dated: May 28, 2008.

                                             Respectfully Submitted,

                                             KAREN P. HEWITT
                                             United States Attorney


                                             S/ A. Dale Blankenship
                                             A. DALE BLANKENSHIP
                                             Assistant United States Attorney
                                             Attorneys for Plaintiff
                                             United States of America
                                             Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS ARNOLDO-AREVALO,<br><br>Defendant. | Criminal Case No. 08CR0293-LAB<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of:

**GOVERNMENT'S TRIAL MEMORANDUM**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Robert L. Swain, Esq., rls11@aol.com**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
**None**
the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 28, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP